1

LEXSEE 2003 US Claims LEXIS 89

LA GLORIA OIL AND GAS COMPANY, Plaintiff, v. THE UNITED STATES, Defendant.

No. 02-465 C

UNITED STATES COURT OF FEDERAL CLAIMS

2003 U.S. Claims LEXIS 89

April 15, 2003, Filed

DISPOSITION:
Defendant's motion for summary judgment denied. Plaintiff's motion for summary judgment granted in part and denied in part.

COUNSEL:
[*1] J. Keith Burt, Washington, DC, for plaintiff. Kerry L. Edwards, Washington, DC, of counsel.

Steven J. Gillingham, with whom were Robert D. McCallum, Assistant Attorney General, David M. Cohen, Director, and Kyle Chadwick, United States Department of Justice, Washington, DC, for defendant. Bernard A. Duval, Donald S. Tracy, and Karen E. Schools, Defense Energy Support Center, Fort Belvoir, VA, of counsel.

JUDGES:
EMILY C. HEWITT, Judge.

OPINIONBY:
EMILY C. HEWITT

OPINION:

OPINION AND ORDER

HEWITT, Judge

Plaintiff, La Gloria Oil and Gas Company (La Gloria), seeks damages from defendant, the Defense Energy Support Center (DESC), n1 arising out of the use of an allegedly illegal economic price adjustment clause in a series of six competitively-awarded fuel supply contracts. The parties have filed cross-motions for partial summary judgment. For the following reasons, defendant's motion is DENIED, and plaintiff's motion is GRANTED on the issue of quantum valebant relief and with respect to the invalidity of the individual and class deviations. Plaintiff's motion is DENIED with respect to the applicability of the judicial estoppel doctrine to the calculation of fair market value.

- - - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - - -

n1 DESC is part of the Defense Logistics Agency (DLA) in the Department of Defense (DoD). Complaint (Compl.) P 7. Facts cited to the briefing of only one of the parties do not appear to be in dispute.

- - - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - - -

[*2]

I. Background

Between 1993 and 1999, DESC awarded La Gloria six contracts to supply military jet and diesel fuel at various locations in the United States. n3 Plaintiff's Cross-Motion for Partial Summary Judgment and Opposition to Defendant's Motion for Partial Summary Judgment (Pl.'s Mot. and Opp.) at 6; Complaint (Compl.) PP 1, 10, 24. The contracts were valued at approximately $ 157 million. Compl. P 10. Each contract was to be performed for a one-year period. Defendant's Motion for Partial Summary Judgment (Def.'s Mot.) at 2.

- - - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - - -

n3 DESC awarded the following contracts to La Gloria: DLA600-93-D-0559 (1993 contract), SPO600-95-D-0480 (1995 contract), SPO600-96-D-047565 (1996 contract), SPO600-97-D-0464 (1997 contract), SPO600-98-D-0468 (1998 contract), and SPO600-99-D-0478 (1999 contract). Pl.'s Mot. and Opp. at 6 n.7; Plaintiff's Appendix (Pl.'s App.) at 106-45.

- - - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - - -

Plaintiff's contracts contained a standard economic price adjustment (EPA) clause used by DESC. Compl. P 11. Plaintiff's 1993 contract contained [*3] an EPA clause that adjusted the prices paid to La Gloria based on changes in price indexes published by the Department of Energy in the Petroleum Marketing Monthly (PMM Indexes). Id. at P 13, 16; Def.'s Mot. at 6-7. Plaintiff's 1995, 1996, 1997, 1998, and 1999 contracts each contained an EPA clause that adjusted the prices paid to La Gloria based on changes reported in Platts Oilgram Price Report (Platts), a daily industry publication. Def.'s Mot. at 7. Except for the use of the different indexes, the EPA clauses in the 1993 and subsequent contracts were substantially identical to the EPA clause denominated B19.33 (Clause B19.33).

La Gloria alleges that the EPA clauses used in its contracts violated the Federal Acquisition Regulation (FAR). Compl. PP 3, 13-17. Based on the alleged illegality of the EPA clauses, plaintiff claims that it "is entitled to recover based on the fair market value of the fuel it delivered to DESC . . . by way of reformation, quantum valebant, or rescission and restitution." Id. at P 33.

Defendant denies that the EPA clauses in plaintiff's contracts are illegal. Def.'s Mot. at 16-20. Defendant argues that even if the EPA clauses do not comply [*4] with the FAR, DESC may use the clauses based on properly obtained and approved deviations. Id. at 9-10. Defendant also contends that plaintiff cannot maintain its suit based on the alleged illegality of the EPA clauses because plaintiff has failed to show that it suffered any harm. Id. at 31-32.

The parties have cross-moved for partial summary judgment on the issue of liability.

II. Discussion

A. Standard of Review

Summary judgment is proper when no genuine issues of material fact are in dispute and the moving party is entitled to judgment as a matter of law. Rule 56 of the Rules of the Court of Federal Claims (RCFC); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986); Mingus Constructors, Inc. v. United States, 812 F.2d 1387 (Fed. Cir. 1987). A genuine dispute of material fact that may significantly affect the outcome of the matter precludes the entry of judgment. Anderson, 477 U.S. at 248. When considering cross-motions for summary judgment, as in this case, the court evaluates each motion under the same standard. Cubic Defense Sys., Inc. v. United States, 45 Fed. Cl. 450, 457 (1999). Issues [*5] of contract interpretation are appropriate for summary judgment. See Dalton v. Cessna Aircraft Co., 98 F.3d

1298, 1305 (Fed. Cir. 1996); P.J. Maffei Bldg. Wrecking v. United States, 732 F.2d 913, 916 (Fed. Cir. 1984). The cross-motions focus on issues of contract interpretation--whether defendant's EPA clause is authorized by the FAR, or if not, whether the use of the clause was authorized by deviations from the FAR.

B. Whether the EPA Clauses Used in Plaintiff's Contracts were Illegal

Plaintiff argues that defendant's EPA clause violates the terms of the FAR, that defendant has conceded its EPA clauses do not comply with the FAR, and that the testimony of a FAR drafter supports a finding that defendant's EPA clauses are illegal. Pl.'s Mot. and Opp. at 9-22.

Defendant challenges the holdings in Barrett Refining Corp. v. United States, 242 F.3d 1055 (Fed. Cir. 2001) (Barrett III) and MAPCO Alaska Petroleum, Inc. v. United States, 27 Fed. Cl. 405 (1992) (MAPCO), see Def.'s Mot. at 25-26; Defendant's Reply and Opposition to Plaintiffs' (sic) Cross-Motion for Partial Summary Judgment (Def.'s Reply) at 2-3, and [*6] denies making any concession that its EPA clauses are illegal. See Def.'s Reply at 8-10. Defendant contends that the declaration of Ms. Etha Quinn, one of the FAR drafters, reflects her personal opinion and "is not admissible regulatory history." Def.'s Reply at 10-11. Because defendant has asserted in this case substantially identical arguments to those addressed by this court in MAPCO and Gold Line Refining, Ltd. v. United States, 54 Fed. Cl. 285 (2002) (Gold Line), the court addresses defendant's contentions as economically as possible.

1. The Applicable FAR Provisions and the Case Law Interpreting Those Provisions

The FAR authorizes the use of an EPA clause in a fixed-price contract to "provide[] for [the] upward and downward revision of the stated contract price upon the occurrence of specified contingencies." 48 C.F.R. § 16.203-1 (FAR § 16.203-1) (2003). n4 The FAR recognizes three general types of economic price adjustments: (1) adjustments based on a contractor's established prices; (2) adjustments based on actual costs of labor or material; and (3) adjustments based on cost indexes of labor or material. [*7] FAR § 16.203-1. Significantly, FAR § 16.203-1 does not authorize an adjustment based on price indexes. In deciding to use an EPA clause in a contract, a contracting officer must determine that it is "necessary either to protect the contractor and the Government against significant fluctuations in labor or material costs or to provide for contract price adjustment in the event of changes in the contractor's established prices." n5 FAR § 16.203-3.

- - - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - - -

n4 This language in the current version of the FAR was in effect prior to defendant's issuance of the solicitations for the fuel supply contracts that are the subject of this case. See FAR § 16.203-1 (1992).

n5 When the government shifted in the 1980s to the use of illegal EPA clauses based on price indexes, its purpose was to shift risk off of the government and onto the contractor. See Appendix to Plaintiff's Cross-Motion for Partial Summary Judgment and Opposition to Defendant's Motion for Partial Summary Judgment (Pl.'s App.) at 239-40; Appendix to Defendant's Motion for Partial Summary Judgment (Def.'s Ex.) 4.

- - - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - - -

[*8]

In MAPCO, n6 this court considered the enforceability of EPA clause, Clause B19.33, the same EPA clause that La Gloria challenges in this case. The plaintiff-contractor in MAPCO challenged the legality of the EPA clause using the PMM Index contained in its fuel supply contract with DESC because the PMM Index was a price index, rather than a cost index of labor or material permitted under FAR § 16.203-1. 27 Fed. Cl. at 406-08. Following careful analysis of the pertinent FAR provisions, review of the regulatory history, examination of the record, and consideration of the parties' arguments, the court held that the EPA clauses were "plainly inconsistent with the FAR." Id. at 408. The court found

that, "having chosen to use the mechanism of an economic price adjustment clause, defendant [was] obligated to comply with applicable regulations limiting its use . . . . [but that defendant] offered no principled reason for not doing so." Id. at 416. The court determined that the EPA clause used in the fuel supply contract did not comply with FAR § 16.203. Id.

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n6 After the parties settled their dispute, the court denied defendant's motion to reconsider its refusal to vacate the opinion granting summary judgment to plaintiff on all liability issues. See MAPCO Alaska Petroleum, Inc. v. United States, 30 Fed. Cl. 153 (1993). The court stated that "in the circumstances at bar, [it found] vacatur to be contrary to the public interest." Id. at 155.

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - -

[*9]

Subsequently, in Barrett Refining Corp. v. United States, 42 Fed. Cl. 128 (1998) (Barrett I), another plaintiff-contractor sought damages from the DESC on the ground that the government had used an unauthorized EPA clause, the same Clause B19.33 at issue in this case, in its fuel supply contract. Barrett I, 42 Fed. Cl. at 133. At trial in that case, the government "conceded that the pricing mechanisms used in the contracts . . . were unauthorized." Id. at 130. After further proceedings to determine whether the government was entitled to damages on its counterclaim, the Federal Circuit affirmed on appeal that the Court of Federal Claims properly exercised jurisdiction over plaintiff's claims for quantum valebant relief because plaintiff's claim was premised on an implied-in-fact contract. Barrett III, 242 F.3d at 1059, aff'g-in-part and rev'g-in-part Barrett v. United States, 45 Fed. Cl. 166, 170 (1999) (Barrett II ). n7

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n7The Federal Circuit vacated, on other grounds, part of the decision of Court of Federal Claims and remanded. See 50 Fed. Cl. 567 (2001) (on remand).

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - -

[*10]

La Gloria asserts here that FAR § 16.203 is a mandatory regulatory provision. Plaintiff's Reply to Defendant's Opposition to Plaintiff's Cross-Motion for Partial Summary Judgment (Pl.'s Reply) at 4-10. La Gloria argues that in Barrett III, the Federal Circuit adopted the court's holding in MAPCO, thereby establishing the illegality of defendant's EPA clause. Pl.'s Mot. and Opp. at 9-13.

Defendant disputes the correctness of the MAPCO decision and asserts that FAR § 16.203 does not prohibit use of the EPA clauses in plaintiff's contracts. Def.'s Mot. at 25-30. Moreover, defendant argues that Barrett III does not establish the illegality of the EPA clause. "Because the 'illegality' issue was not raised in the trial court, it also was not before the appeals court in Barrett [III]." Id. at 4. Stating that "FAR 16.203-1 does not purport to be proscriptive," defendant contends that the regulations governing EPA clauses do not prohibit use of DESC's EPA clause. Id. at 25-26. Defendant also argues that the MAPCO decision is irrelevant to most of this case because five of the six contracts challenged in this action were authorized by deviations, id. [*11] at 15, an argument addressed in Part II.C of this opinion.

Defendant's position with respect to FAR § 16.203, specifically whether or not FAR § 16.203-1 is mandatory and whether Clause B19.33 comports with the FAR, has been directly considered and addressed by this court in MAPCO and most recently in Gold Line. For the reasons stated briefly above and in detail in those decisions, it is the view of this court that Clause B19.33 was not a type of EPA clause permitted by the FAR.

2. Defendant's Prior Statements Concerning the Illegality of the Challenged EPA Clause

Plaintiff also contends that, by seeking FAR deviations to permit continued use of the challenged EPA clauses after the MAPCO decision, defendant has conceded the illegality of the price adjustment clauses in plaintiff's contracts. Pl.'s Mot. and Opp. at 13-15. Plaintiff argues that prior statements by defendant concerning the challenged EPA clause constitute "admissions" of illegality. Id. Plaintiff cites Barrett I, Phoenix Petroleum Co. v. United States, 40 Fed. Cl. 862 (1998), rev'd, 215 F.3d 1345 (1999), and Pride Cos. v. United States, 2000 U.S. Claims LEXIS 213 [*12] (May 10, 2000) (Pride Cos.), to support its argument that defendant has acknowledged the illegality of its EPA clause in cases before both the Federal Circuit and this court. Pl.'s Mot. and Opp. at 13-14.

Defendant states that plaintiff has "unfairly characterized" its statements and positions in other cases. Def.'s Reply at 8. Citing Swift & Co. v. Hocking Valley Ry. Co., 243 U.S. 281, 289, 61 L. Ed. 722, 37 S. Ct. 287 (1917) and Hegeman-Harris & Co. v. United States, 440 F.2d 1009, 1012, 194 Ct. Cl. 574 (Ct. Cl. 1971), defendant asserts that "admissions and concessions of law are generally not . . . binding upon a court, and thus, do not bind parties." Id. Thus, defendant reasons that "even if [its] conduct were interpreted as an admission," it would not be binding on the court because "whether the EPA clauses complied with the FAR is a question of law." Id.

The court agrees that defendant is not bound by its positions in Barrett III or the other cases. But the court notes that defendant's own explanation of why it sought FAR deviations for its 1993 and subsequent procurements supports the court's view that Clause B19.33 violates the FAR. n8

- - - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - - -

n8 In a memorandum accompanying DESC's internal agency request for a deviation from FAR § 16.203, dated January 5, 1993, defendant references the decision of the United States Court of Federal Claims in MAPCO. See Pl.'s App. at 234-35, 238. Reviewing the relevant FAR provisions, defendant states that "the types of EPA provisions specifically authorized by the FAR are not satisfactory alternatives to the market indexes DFSC utilizes in petroleum contracting." Id. at 238. Defendant explains:

> DFSC has studied and used EPA provisions for many years and has tried several different types . . . . Crude oil escalators, which would reflect 80-90 per cent of the refiner's cost to produce a petroleum product, and are authorized by FAR 16.203-1(b, c), are not normally reflective of product prices and create evaluation problems in competitive procurements. Refinery postings, on the other hand, which are authorized by FAR 16.203-1(a), are not always available or reliable . . . .

Id.

- - - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - - -

[*13]

3. Ms. Quinn's Declaration

Plaintiff relies on a declaration by Ms. Etha Quinn, the principal drafter of FAR § 16.203, for support of its argument. Plaintiff contends that because the drafters of the FAR expressly considered and rejected establishing prices based on price indexes, defendant's interpretation of FAR § 16.203 cannot stand. n9 Pl.'s Mot. and Opp. at 15-18.

- - - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - - -

n9 Ms. Quinn's declaration was originally submitted to the court in the MAPCO case. Pl.'s Mot. and Opp. at 16 n.19.

- - - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - - -

Defendant urges the court to disregard Ms. Etha Quinn's declaration because

"with respect to the [challenged] EPA provisions . . . the FAR Project did not draft the provisions at issue, it simply preserved and repackaged them." Def.'s Reply at 10 (emphasis deleted) (citing MAPCO, 27 Fed. Cl. at 409). Defendant asserts that Ms. Quinn "has no relevant insight into the intent of the provisions, and is not competent to testify about them." Id. Defendant contends that "Ms. Quinn's opinion is not admissible [*14] regulatory history." Id. at 10-11 (relying on MAPCO, 27 Fed. Cl. at 409 n.6 (finding that "post hoc statements by drafting officials . . . hold no probative value, especially when 'uttered in the context of a vigorous dispute'")).

The court agrees with defendant that the court should not rely on Ms. Quinn's declaration to establish the interpretation of FAR § 16.203. At the time of the 1978 FAR Project, FAR § 16.203 was based on the then-existing Defense Acquisition Regulation (DAR) and Federal Procurement Regulation (FPR). Pl.'s Mot. and Opp. at 16. The charter of the 1978 FAR Project was to "unify and simplify federal procurement system" without making substantive or policy changes to the existing regulations. Id. In her declaration, Ms. Quinn stated that the drafters of FAR § 16.203 rejected a specific proposal, submitted during the period for public comment, to change the current regulation FAR § 16.203-1 to include price indexes. Id. She explained that the proposal was rejected because "to add a new provision providing for price indexes in addition to cost indexes would have been a substantive policy change from the DAR and FPR which was not permitted [*15] by the Office of Federal Procurement Policy guidelines." Id. Ms. Quinn's declaration is of limited assistance to the court, however, because her testimony was prepared in connection with the MAPCO litigation. See id. at 16 n.19.

The court observes that, while attacking Ms. Quinn's declaration, defendant does not dispute various factual statements in her testimony which are consistent with the views of the court in MAPCO, Gold Line and here that price indexes are not contemplated by FAR § 16.203. However, for the reasons stated by this court in MAPCO, the court does not rely on Ms. Quinn's testimony. n10

- - - - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - - - -

n10 The court notes that, notwithstanding that her testimony was prepared in connection with litigation, Ms. Quinn's testimony is entirely consistent with the regulatory history describing the purpose of the 1978 FAR Project. As the court in MAPCO observed:

Periodically between [the commencement of the 1978 FAR Project] and September 19, 1983, [the publication date of the final draft of the FAR] . . . the Office of Federal Procurement Policy ran a statement as to the purposes underlying the FAR:

The fundamental purposes of the FAR are to reduce proliferation of regulations; to eliminate conflicts and redundancies; and to provide an acquisition regulation that is simple, clear and understandable. The intent is not to create new policy. However, because new policies may arise concurrently with the FAR project, the notice of availability of draft regulations will summarize the section or part available for review and describe any new policies therein.

See, e.g., "Types of Contracts," 46 Fed. Reg. 42,303 (1981) (emphasis added). No new policies were described in the portion of the draft summarizing FAR Part 16, which governs the present dispute. See id. at 42,304.

27 Fed. Cl. at 409. The portion of the draft summarizing FAR Part 16 that governed the dispute in MAPCO also governs the dispute in this case.

- - - - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - - - -

[*16]

C. Whether FAR Deviations Permit Use of the EPA Clause in Plaintiff's Contracts

Defendant argues that, consistent with FAR subpart 1.4, five of the six contracts awarded to plaintiff contained EPA clauses that were used in

accordance with agency-authorized deviations. See Def.'s Mot. at 12-13. Defendant asserts that it obtained individual deviations for two of its contracts with plaintiff, specifically, its 1995 and 1996 contracts, Def.'s Reply at 11; Transcript of March 7, 2003 Oral Argument (Tr.) at 23-29, and that it obtained a class deviation which applied to three of its contracts with plaintiff, specifically, its 1997, 1998, and 1999 contracts. Def.'s Reply at 11. Defendant notes that, in an internal memorandum concerning the deviations, DESC "plainly recorded [its] disagreement with MAPCO" but decided to obtain the deviations as a "prudent response to the MAPCO decision . . . ." Def.'s Reply at 8.

Plaintiff contends that the deviations were not issued in compliance with the applicable regulatory law and are therefore invalid. n11 Pl.'s Mot. and Opp. at 22-32. Plaintiff also argues that even if the class deviation were found valid, it expired on October 5, 1998 and [*17] cannot apply to the last contract awarded to La Gloria in 1999. Id. at 32-33.

- - - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n11 The court declines to address at length plaintiff's arguments concerning defendant's alleged violation of the Regulatory Flexibility Act (RFA), 5 U.S.C. §§ 601-612. See Pl.'s Mot. and Opp. at 29-32; Pl.'s Reply at 15-16. The express terms of the RFA provide that only "a small entity that is adversely affected or aggrieved by final agency action is entitled to judicial review of agency compliance with the requirements [of certain prescribed statutory provisions]." 5 U.S.C. § 611(a)(1). Contrary to plaintiff's argument that it is entitled to argue defendant's failure to comply with all the applicable regulations in procuring its military fuel supplies, see Pl.'s Reply at 29, it is the view of the court that because plaintiff is not a small business, it lacks standing to challenge defendant's compliance with the requirements of the RFA.

- - - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - - -

As defined in FAR § 1.401(a), a deviation [*18] is "the issuance or use of a policy, procedure, solicitation provision . . ., contract clause . . ., method, or practice of conducting acquisition actions of any kind at any stage of the acquisition process that is inconsistent with the FAR." FAR § 1.403 governs individual deviations. FAR § 1.404 governs class deviations.

1. Whether the 1995 and 1996 Contracts Were Authorized by Individual Deviations

FAR § 1.403 addresses individual deviations. At the time that DESC sought individual deviations for plaintiff's 1995 and 1996 contracts, FAR § 1.403 stated that "individual deviations affect only one contracting action." See Pl.'s Mot. and Opp. at 23 n.26 (emphasis added); Pl.'s App. at 74.

Plaintiff interprets the regulatory language to require that an individual deviation apply only to "one contract." Pl.'s Mot. and Opp. at 23. La Gloria asserts that, in violation of the law, DESC obtained two "individual" deviations that each applied to more than one contract. Pl.'s Mot. and Opp. at 22-23; Tr. at 42. Plaintiff argues that the deviations are invalid and cannot be applied to its 1995 and 1996 contracts. See Pl.'s Mot. and Opp. at 22.

In support of its position, plaintiff [*19] points out that in March 2002, a language change from the term "contracting action" to "contract action" became effective throughout the FAR. See Pl.'s Mot. and Opp. at 23 n.26; Final Rule for Federal Acquisition Regulation: Definitions for "Contract Action" and " Contracting Action," 67 Fed. Reg. 13053-1 (Mar. 20, 2002). Asserting that the change in language "was merely editorial," plaintiff states that corresponding changes were made to FAR § 1.404 which addresses class deviations and to FAR § 5.001 which defines a contract action. Pl.'s Mot. and Opp. at 23 n.26. Noting that prior to the March 2002 language change throughout the FAR, a "contracting action" was defined for purposes of FAR subpart 5 as "an action resulting in a contract," see FAR § 5.001, plaintiff argues that the same definition must "have been intended in FAR subpt. 1.4[.]" Pl.'s Mot. and Opp. at 23 n.25. Plaintiff further argues that DLAR § 1.403, a provision of the Defense Logistics

Acquisition Directive corresponding to FAR § 1.403, n12 as in effect both before and after the March 2002 FAR language change provided that individual deviations "affect only one contract or transaction." [*20] Pl.'s Mot. and Opp. at 23; Appendix to Plaintiff's Cross-Motion for Partial Summary Judgment and Opposition to Defendant Motion for Partial Summary Judgment (Pl.'s App.) at 99.

- - - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - - -

n12 The current Defense Logistics Acquisition Directive (DLAD) was formerly known as the DLAR or Defense Logistics Acquisition Regulation.

- - - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - - -

Plaintiff complains that defendant obtained two "individual" deviations for fuel supply procurements that were not single contract actions as contemplated by the FAR but resulted in the award of as many as 30 contracts worth $ 4 billion dollars. See Pl.'s Mot. and Opp. at 23; Pl.'s Reply at 11; Tr. at 42-44. Challenging defendant's practice of "seeking one deviation for 'all domestic fuel solicitations' for an indefinite period," plaintiff contends that "DESC could rely on individual deviations to support its use of price indexes only by obtaining a separate deviation for each contract." Pl.'s Mot. and Opp. at 23.

Plaintiff argues that defendant's fuel procurements, which occurred in the fall and [*21] again in the spring, involved a "class of contracts" and therefore, required a class deviation rather than individual deviations. Pl.'s Reply at 11. Plaintiff notes that DESC itself had previously treated "the same [type of fuel supply] procurements" as a class of contracts. Pl.'s Mot. and Opp. at 24. In particular, plaintiff points to an occasion when the Commander of DESC authorized an exemption from the statutory requirement for public advertising for "the proposed class of contracts." n13 See Pl.'s App. at 220-23.

- - - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - - -

n13 Plaintiff recognizes that the documented findings supporting the DESC Commander's decision to authorize the exemption from the statutory formal advertising requirement for the "class of [fuel supply] contracts" accompanied a 1984 procurement, nine years before the earliest of the contracts in dispute here. Pl.'s Mot. and Opp. at 24 n.27. But plaintiff points out that the fundamental structure of defendant's fall and spring procurements for fuel supplies has remained the same, id., a point defendant does not dispute. See Def.'s Mot. at 6 (stating "all of DESC's contracts contained a version of a DESC economic price adjustment clause ('EPA') that DESC had used since 1984.")

Plaintiff asserts that defendant's own documented characterization of the fuel supply procurements as a "class of contracts" rather than as an "individual contract action" evidences an inconsistency in defendant's view and "at a bare minimum, . . . creates a genuine issue of material fact concerning whether a 'class' deviation was required." Pl.'s Reply at 11; see Pl.'s Mot. and Opp. at 24. The court believes this issue is resolvable as a matter of law and notes but, does not rely on, the fact that this extrinsic evidence is consistent with the court's interpretation of the FAR.

- - - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - - -
[*22]

Defendant contends that "[plaintiff's] reading of 'contracting action' is crabbed and unconventional." Def.'s Reply at 13. Defendant claims that it properly obtained individual deviations for multiple contracts awarded under one solicitation because the multiple contracts were part of a single " contracting action." Def.'s Reply at 12-13.

Defendant asserts that the FAR broadly defines "contracting" to include "selection and solicitation of sources, preparation and award of contracts, and all phases of contract administration." Def.'s Reply at 13. Citing FAR § 1.201, defendant contends that FAR § 5.001 "does not limit a 'contracting action' to only one contract" but rather defines a contracting action as "an action resulting in a contract." Id. (second emphasis added). Reasoning that a "'