IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 02-1460C
(Judge Block)

HERMES CONSOLIDATED, INC.,
DOING BUSINESS AS WYOMING REFINING COMPANY,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

# PLAINTIFF'S SUPPLEMENTAL BRIEF

J. Keith Burt
Mayer, Brown, Rowe & Maw
1909 K Street, N.W.
Washington, D.C. 20006

Attorneys for Plaintiff,
Hermes Consolidated, Inc.,
Doing Business As
Wyoming Refining Company

*Of Counsel:*

Adrian L. Steel, Jr.
Mayer, Brown, Rowe & Maw
1909 K Street, N.W.
Washington, D.C. 20006

August 22, 2003

# TABLE OF CONTENTS

**Page**


| | | |
|---|---|---|
| Question 1: | In the Context Of This Case, Can Knowledge Of This Court's Decision In *MAPCO* Be Imputed To Wyoming Such That Waiver Would Apply? | 1 |
| Question 2: | Is A Hearing Or Trial Necessary In Order To Develop A Factual Record On The Issue of Waiver? | 8 |
| Question 3: | Does The Doctrine Of Laches Apply In This Case, And, If So, Whether The Court May Raise The Issue *Sua Sponte*? Assuming Laches Applies, Is A Hearing Or Trial Necessary To Resolve The Matter? | 11 |
| CONCLUSION | | 15 |

# TABLE OF AUTHORITIES

**Page**

## CASES

*A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020 (Fed. Cir. 1992) .......11, 12, 14

*ABC, Inc. v. Primetime 24*, 17 F. Supp. 2d 478 (M.D.N.C. 1998)
*aff'd in part and rev'd in part*, 184 F.3d 348 (4th Cir. 1999) ....................9

*Aero Union Corp. v. United States*, 47 Fed. Cl. 677 (2000) ....................12

*Albemarle Paper Co. v. Moody*, 422 U.S. 405 (1975) ....................12

*Amoco Production Co. v. U.S.*, 619 F.2d 1383 (10th Cir. 1980) ....................3, 4

*AT&T v. United States*, 124 F.3d 1471 (Fed. Cir. 1997)
*vacated and withdrawn*, 136 F.3d 793 (Fed. Cir. 1998) ....................3

*AT&T v. United States*, 177 F.3d 1368 (Fed. Cir. 1999) ....................2

*AT&T v. United States*, 307 F.3d 1374 (Fed. Cir. 2002)
*petition for cert. filed*, 71 U.S.L.W. 3699 (April 25, 2003) (No. 01-5044) ....................7

*Barrett Ref. Corp. v. United States*, 42 Fed. Cl. 128 (1998) ....................14

*Barrett Ref. Corp. v. United States*, 242 F.3d 1055 (Fed. Cir. 2001) ....................3

*Bell v. Hood*, 327 U.S. 678 (1946) ....................11

*Beta Systems, Inc. v. United States*, 838 F.2d 1179 (Fed. Cir. 1988) ....................1, 7

*Bibeau v. Pacific Northwest Research Foundation, Inc.*
1999 U.S. App. LEXIS 38092 (9th Cir. Aug. 19, 1999) ....................4

*Cheek v. United States*, 498 U.S. 192 (1991) ....................5

*Chris Berg, Inc. v. United States*, 426 F.2d 314 (Ct. Cl. 1970) ....................8

**TABLE OF AUTHORITIES**

**(continued)**

**Page**

*Cleveland-Perdue v. Brutsche,* 881 F.2d 427 (7th Cir. 1989) ....................3

*Colley v. Conseco Medico Ins. Co.*, 11 Fed. App. 487 (6th Cir. 2001) ....................9

*Cornetta v. United States*, 851 F.2d 1372 (Fed. Cir. 1988) ....................12, 13, 14

*Emerson Electric Mfg. Co. v. O'Neill,* 168 F. Supp. 804 (E.D. Mo. 1958) ....................5

*E.W. Bliss Co. v. United States*, 77 F.3d 445 (Fed. Cir. 1996) ....................8

*The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22 (1913) ....................11

*Gardner v. Panama R. Co.*, 342 U.S. 29 (1951) ....................12

*Gromo v. United States*, 93-5161, 1993 U.S. App. LEXIS 29139 (Fed. Cir. Nov. 9, 1993) ....................4

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) ....................2

*Hosey v. Interstate Commerce Commission* 1997 U. S. App. LEXIS 34247 (Fed. Cir. Dec. 8, 1997) ....................9

*In re Calore Express Co.*, 288 F.3d 22 (1st Cir. 2002) ....................9

*James v. O'Bannon,* 715 F.2d 794 (3d Cir. 1983) ....................2

*Johnson v. Zerbst*, 304 U.S. 458 (1938) ....................1, 5, 7

*Kaiser Steel Corp. v. Mullins*, 455 U.S. 72 (1982) ....................1

*Komlosi v. New York State Office of Mental Retardation and Developmental Disabilities* 64 F.3d 810 (2d Cir. 1995) ....................2

*La Gloria Oil & Gas Co. v. United States*, 56 Fed. Cl. 211 (2003) ....................14

*LaBarge Products Inc. v. West*, 46 F.3d 1547 (Fed. Cir. 1995) ....................7, 8

# TABLE OF AUTHORITIES

**(continued)**

**Page**

*Lorillard v. Pons,* 434 U.S. 575 (1978) ........ 2

*MAPCO Alaska Petroleum, Inc. v. United States*, 27 Fed. Cl. 405 (1992) ........ 3, 6, 7, 13

*MAPCO Alaska Petroleum, Inc. v. United States*, 30 Fed. Cl. 153 (1993) ........ 3

*Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439 (6th Cir. 1993) ........ 12

*National R.R. Passenger Corp. v. Morgan,* 536 U.S. 101 (2002) ........ 11

*Pride Cos. v. United States*, 2000 U.S. Claims LEXIS 213 (2000) ........ 14

*Ratzlaf v. United States*, 510 U.S. 135 (1994) ........ 5

*S.E.R., Jobs for Progress v. United States*, 759 F.2d 1 (Fed. Cir. 1985) ........ 12

*Seaboard Lumber Co., v. United States*, 903 F.2d 1560 (Fed. Cir. 1990) ........ 1

*Thomas v. Roberts,* 261 F.3d 1160 (11th Cir. 2001) ........ 2

*Thyssen, Inc. v. Calypso Shipping Corp.*, 310 F.3d 102 (2d Cir. 2002) ........ 11, 12

*Toquero v. Merit Systems Protection Board,* 982 F.2d 520 (Fed. Cir. 1993) ........ 3, 4

*Trumbull Steel Co. v. United States*, 1 F. Supp. 762 (Ct. Cl. 1932) ........ 5, 6

*Tyler v. United States*, 600 F.2d 786 (Ct. Cl. 1979) ........ 12

*United States ex rel. Clark v. Anderson*, 356 F Supp. 445 (D. Del. 1973)
*rev'd on other grounds*, 502 F.2d 1080 (3d Cir. 1974) ........ 2, 3

*United States v. Golitschek*, 808 F.2d 195 (2d Cir. 1986). ........ 5

*Wanlass v. General Electric Co.*, 148 F.3d 1334 (Fed. Cir. 1998) ........ 12, 13, 14

**TABLE OF AUTHORITIES**

**(continued)**

**Page**

*Yerxa v. United States,* 11 Cl. Ct. 110 (Cl. Ct. 1986)
*aff'd*, 824 F.2d 978 (Fed. Cir. 1987) ..........6

**DOCKETED CASES**

*Calcasieu Refining Company v. United States*, No. 02-1219 (Fed. Cl. July 31, 2003) ..........7, 8

*Sunoco, Inc. v. United States*, No. 02-466C (Fed. Cl. 2002) ..........7

*Hermes Consolidated, Inc., d/b/a Wyoming Refining Co. v. United States*
No. 02-1460 (Fed. Cl. August 7, 2003) .......... *passim*

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| HERMES CONSOLIDATED, INC., Doing Business As Wyoming Refining Company,<br><br>Plaintiff,<br>vs.<br><br>THE UNITED STATES,<br><br>Defendant. | ) | No. 02-1460C<br>(Judge Block) |

**PLAINTIFF'S SUPPLEMENTAL BRIEF**

Pursuant to the Court's August 7, 2003 Opinion and Order, Plaintiff Hermes Consolidated, Inc., d/b/a/ Wyoming Refining Company (hereafter "Wyoming"), respectfully submits its Supplemental Brief responding to the three questions raised by the Court.[1]

**Question 1: In The Context Of This Case, Can Knowledge Of This Court's Decision In *MAPCO* Be Imputed To Wyoming Such That Waiver Would Apply?**

Waiver is the "intentional relinquishment or abandonment of a *known* right or privilege." *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938) (emphasis added); *see also Seaboard Lumber Co. v. United States*, 903 F.2d 1560, 1563 (Fed. Cir. 1990). Even assuming that *MAPCO* created a right or a privilege that could be intentionally relinquished (but see, *infra*, page 3-4), that right or privilege would have to have been *known* to Wyoming for Wyoming to waive it. *Id.* For purposes of the present motions, this Court has found that Wyoming was not aware of *MAPCO* prior to entering the contracts in this case. (Aug. 7, 2003 Order at 21.) Contrary to DESC's

[1]In submitting its Supplemental Brief, Wyoming respectfully maintains the position set forth in its prior briefs that the controlling rule of law is that set forth by the Supreme Court in *Kaiser Steel Corp. v. Mullins*, 455 U.S. 72 (1982), wherein the Court stated: "[I]f it be suggested that Kaiser should not have waited so long to assert its defense [of illegality], the Court has held that 'rules of estoppel will not be permitted to thwart the purposes of the statutes of the United States.'" *Id.* at 81 n.6 (citation omitted). Consistent with *Kaiser*, Wyoming rests upon the Federal Circuit's holding in *Beta Systems, Inc. v. United States*, 838 F.2d 1179 (Fed Cir. 1988), that: "If the BLS index violated the [F]AR, the government can not, by law, benefit from it." *Id.* at 1185.

assertion, knowledge of *MAPCO* cannot be imputed to Wyoming, nor, in any event, would such imputation support a finding of waiver.[2]

**A.**

The law may not be imputed unless it is "clearly established." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The law is deemed "clearly established" and therefore imputable to government officials when it is set forth in "decisions of the U.S. Supreme Court, [the Appellate] Court, or the highest court of the state from which the case arose." *Thomas v. Roberts,* 261 F.3d 1160, 1170 (11th Cir. 2001); *see also Komlosi v. New York State Office of Mental Retardation and Developmental Disabilities,* 64 F.3d 810, 816 (2d Cir. 1995) (law not clearly established in Second Circuit despite decision by First Circuit and distinguishable Second Circuit decision that had been vacated by Supreme Court). Similarly, courts impute knowledge of the law to Congress as a backdrop to legislation only where the law is well recognized. *See Lorillard v. Pons,* 434 U.S. 575, 580 (1978) (Congress presumptively aware of case law where "every court to consider the issue" had decided similarly); *James v. O'Bannon,* 715 F.2d 794, 804 (3d Cir. 1983) (Congress presumed aware of appellate court and Supreme Court cases where language of statute tracked appellate case and removed language relied on by Supreme Court). In contrast, individual trial court decisions, which can be inconsistent and can be reversed or superceded, are not imputed because such imputation would risk subjecting third parties to inconsistent standards of conduct. *See generally United States ex rel. Clark v. Anderson*, 356 F. Supp. 445, 451 (D. Del. 1973) (refusing to impute a trial court's construction of a statute "because the highest court in the state had never had an opportunity to rule on the point"), *rev'd on other grounds*, 502 F.2d 1080 (3d Cir. 1974); *cf. Cleveland-Perdue v. Brutsche,* 881 F.2d 427, 431 (7th Cir. 1989) ("In

---

[2] Wyoming notes that DESC's response to the Court's three questions proceeds upon a fundamental misconception. DESC's assertion, that Wyoming should be presumed to have knowledge of the FAR and, therefore, should have known that DESC's pricing was illegal, proves too much. (DESC's Supp. Br. at 1-2.) Under that theory, no contract could ever be challenged as contrary to law or public policy, because the mere act of entering the contract would constitute a waiver, all other elements of waiver being presumed. *AT&T III* unambiguously precludes such a result. *AT&T v. United* States, 177 F.3d 1368, 1376 (Fed. Cir. 1999).

the absence of a controlling precedent," a right might also be established if there is "a sufficient consensus" among lower courts.).[3]

This Court recognized that trial court decisions ordinarily are not imputable, but suggested that Wyoming's status as a "sophisticated government contractor" provides a stronger basis for imputing *MAPCO*. (Aug. 7, 2003 Order at 20-21.) Wyoming respectfully submits that it is inconsistent with the rule of law to impute the law based on the sophistication of a party (however that might be determined). Indeed, such a rule could result in parties to the same case having different rules of law imputed to them based solely on their purported sophisticated. Moreover, imputing a trial court decision to some parties but not others is fundamentally inconsistent with the premise for imputation – namely, that the law in question is clearly established.

Here, *MAPCO* is a decision of a single trial court and cannot in any meaningful sense be described as clearly established law. The *MAPCO* court itself, in a subsequent decision, stated that *MAPCO* is "not binding precedent in any . . . sense," *MAPCO*, 30 Fed. Cl. 153, 154 (1993), and, to this day, DESC disputes the validity of *MAPCO*, avowing to challenge its holding on appeal. Further, *MAPCO* itself expressly reserved and, because of a subsequent settlement left unresolved, the issue of whether there was a remedy for DESC's illegal prices. *MAPCO*, 27 Fed. Cl. at 406 ("We find that the EPA clauses employed by the Government were unauthorized, but ruling is deferred as to the ultimate effect of that illegality.").[4]

---

[3] In fact, imputation of an individual trial court decision would impose a greater burden on third parties than the judges of the same trial court impose upon themselves, for judges of the same trial court are not bound by and may freely disregard one another's decisions. *MAPCO Alaska Petroleum Inc. v. United States*, 30 Fed. Cl. 153, 154 (1993). Furthermore, it is simply not reasonable to assume that citizens read or comprehend every decision of every trial court. *See generally Toquero v. Merit Systems Protection Board*, 982 F.2d 520, 524 (Fed. Cir. 1993) (Plager, J. concurring) ("[w]hile all citizens are presumed to know the law" they are not presumed to know the intricacies of the Code of Federal Regulations.)

[4] A now-vacated panel decision of the Federal Circuit answered the question of remedy in the jurisdictional negative, *AT&T v. United States*, 124 F.3d 1471 (Fed. Cir. 1997), *vacated and withdrawn*, 136 F.3d 793 (Fed. Cir. 1998), and the issue was not finally resolved until *Barrett Refining Corp. v. United States*, 242 F.3d 1055, 1059-60 (Fed. Cir. 2001), wherein the Federal Circuit ultimately rejected DESC's assertion that this Court lacked jurisdiction to afford relief from DESC's illegal prices. *See generally Amoco Production Co. v. United States*, 619 F.2d

(cont'd)

Because *MAPCO* does not represent clearly establish law, it could not have established a right or privilege capable of being waived. If it had, then DESC, too, would be bound by knowledge that its prices were illegal and thus deemed to have knowingly flaunted established law in awarding Wyoming's post-*MAPCO* contracts without a FAR deviation. Such a rule could subject numerous government officials to criminal sanction for knowingly expending government funds in violation of law.[5]

Nor can it be asserted that the law only imputes to Wyoming knowledge of what the Court said in *MAPCO* about DESC's prices. Imputation of what a court said is not imputation of a legal right or privilege, the existence of which is a prerequisite for application of waiver. *Johnson*, 304 U.S. at 464. And to charge a party with knowledge of mere statements in an individual trial court decision is to charge the citizenry with knowledge of every statement of both fact and law in every trial court decision in every court in the nation.[6] Such a result could not be reconciled with due process. *See generally Toquero,* 982 F.2d at 524.[7]

---

(... cont'd)

1383, 1388 (10th Cir. 1980) (when the "law is inconclusive and ambiguous" a party is not "considered so unreasonable in failing to have discovered the existence of a claim that he will be charged with constructive knowledge of that claim.").

[5] DESC also would be deemed to have acted in bad faith in denying Wyoming's claims to the contracting officer and in denying the legality of its prices in this Court, giving rise to additional and substantial claims by Wyoming.

[6] Moreover, to charge a party with knowledge of mere statements in a trial court decision is not supported by the policy underling imputation, which is to prevent citizens from "frustrat[ing] the legislature's exercise of authority by an ostrich-like effort not to learn their legal obligations." *Bibeau v. Pacific Northwest Research Found., Inc.,* 1999 U.S. App. LEXIS 38092, at *15 (9th Cir. Aug. 19, 1999).

[7] The standard for applying waiver -- voluntary relinquishment of a known right -- must be distinguished from the standard for applying the statute of limitations, which is notice to inquire of a potential claim. *See Gromo v. United States, 93-5161*, 1993 U.S. App. LEXIS 29139 at *4-5 (Fed. Cir. Nov. 9, 1993) (citing cases). The latter standard is inapplicable here, as the Congressional waiver of sovereign embodied in the CDA was not conditioned on a statute of limitations during the years relevant to Wyoming's claims. Reliance on a "notice to inquire" standard here would impermissibly bar a claim under the very standard Congress elected not to apply at the relevant time, thereby effectively amending the terms of the Congressional waiver of sovereign immunity.

**B.**

Where knowledge of a legal right or obligation is a specific element of a legal doctrine (such as waiver) or a specific element of a legal offense, neither the doctrine nor the offense can be established based upon implied knowledge of the law. "[W]hen the law makes knowledge of some requirement an element of the offense, it is totally incorrect to say that ignorance of such law is no excuse or that everyone is presumed to know such law." *United States v. Golitschek*, 808 F.2d 195, 203 (2d Cir. 1986). Thus, where a statute requires a "voluntary, intentional violation of a known legal duty," a showing of "actual knowledge of the pertinent legal duty" is required. *Cheek v. United States*, 498 U.S. 192, 200, 202 (1991) (citation omitted); *see also Ratzlaf v. United States*, 510 U.S. 135, 142, 150 (1994) (Congress may make ignorance of the law a valid defense if statute requires "willful" conduct, defined as a violation of a "known legal duty").

In *Trumbull Steel Co. v. United States*, 1 F. Supp. 762 (Ct. Cl. 1932), the plaintiff sought to impute to the government actual knowledge of the law as a basis for alleging that the government asserted a claim against the plaintiff in bad faith. *Id.* at 767. The Court of Claims declined to impute the law or find bad faith, stating: "[t]he presumption of knowledge of the law can not be availed of in order to show that a person asserting a claim had knowledge of its invalidity." *Id.*; *see also Emerson Electric Mfg. Co. v. O'Neill,* 168 F. Supp. 804, 806 (E.D. Mo. 1958) ("presumption of knowledge of the law is not applicable to a determination of good or bad faith").

Just as *Trumbull* required actual knowledge of the law as a prerequisite to finding bad faith, so, too, here the law requires the presence of a "a known right" as a prerequisite to finding waiver. *Johnson*, 304 U.S. at 464. Accordingly, as in *Trumbull*, Wyoming's knowledge of any right or privilege may not be implied, by imputing knowledge of *MAPCO* or otherwise. *Trumbull*, 1 F. Supp. at 767; *see also Cheek*, 498 U.S. at 200, 202.

C.

Even if *MAPCO* could be imputed to Wyoming, Wyoming could not be held to have waived its claims. Imputation of *MAPCO* would carry with it not only knowledge of the Court's finding of illegality, but also knowledge of the Court's express and concomitant finding that, as a matter of law, DESC's violation of the law could not be waived. 27 Fed. Cl. at 416. This Court confronted a similar situation in *Yerxa v. United States,* 11 Cl. Ct. 110 (Cl. Ct. 1986), *aff'd*, 824 F.2d 978 (Fed. Cir. 1987).

In *Yerxa*, the government sought to bar plaintiff's claims based on laches by imputing to plaintiff knowledge of the law prior to his filing suit. *Id.* at 120. In response, plaintiff noted that the law (subsequently reversed) barred the government from raising a laches defense during much of the period of alleged delay. *Id.* at 119. Thus, the plaintiff asserted that, if the Court were to impute knowledge of its claims, the Court must also impute knowledge that any delay in filing suit would be excused because the government could not assert a laches defense. *Id.* The Court agreed, stating:

> [I]f knowledge of the law which is unfavorable is imputed, no sound reason exists to fail to impute knowledge that is favorable. Thus it seems contrary to any definition of equity to hold on the one hand that a plaintiff is *not* excused from the negative effect of laches when he alleges he did *not* know the law, as is often done, and yet hold on the other that when a plaintiff does "know" the law . . . and that law provides him with an excuse, he cannot rely on that same law to his advantage. In essence, whether the imputation of knowledge regarding the law works to plaintiff's disadvantage, or to his advantage, we believe the sounder approach is to recognize that one is facing no more than 'both sides of the same coin.'

*Id.* (emphasis in original).

As in *Yerxa*, if imputation extends to the "negative effects" of the law here, it must also extend to those aspects of the law that are to Wyoming's "advantage." *Id.* If the Court were to impute to Wyoming knowledge of *MAPCO*'s finding of illegality, the Court also must impute to Wyoming knowledge that it need not have considered the prospect of waiver because, in the words of the *MAPCO* Court: "When a contract clause drafted by the Government is inconsistent with law, whether the appellant inquired, protested, accepted or otherwise assumed any risks

regarding the same is not controlling; the impropriety will not be allowed to stand." 27 Fed. Cl. at 416 (citation omitted).

The reasonableness of a contractor's reliance on *MAPCO*'s no-waiver pronouncement could not be subject to meaningful dispute. Prior to *AT&T V*, DESC itself conceded to the Chief Judge of this Court in *Sunoco, Inc. v. United States*, No. 02-466C (Fed. Cl.), that it could not raise a credible waiver defense to its illegal prices. App. 685-86 ("I wasn't satisfied that we had the grounds to pursue a waiver argument;" "I'm not in a position to file any motion on waiver . . . I'm not maintaining the defense.") So, too, this Court recently observed in *Calcasieu Refining Company v. United States*, No. 02-1219 (Fed. Cl. July 31, 2003), that, prior to *AT&T V*, the "cases enforce a strict ruling against waiver when the contractor is the beneficiary of the offending clause." Slip op. at 18. If both DESC and this Court agreed that, prior to *AT&T V*, DESC did not have a waiver defense, then, *a fortiori*, Wyoming could conclude that waiver was not relevant to its claims. Accordingly, as a matter of law, Wyoming could not be deemed to have "intentional[ly] relinquish[ed] . . . a known right" if it waited for the Federal Circuit to clarify the law in *Barrett* before bringing suit. *Johnson*, 304 U.S. at 464.

**D.**

Even if the Court were only to impute to Wyoming knowledge of *MAPCO*'s finding of illegality, Wyoming still may not be found to have waived its claims. As to the two contracts awarded after *MAPCO*, knowledge of a potential illegality prior to contract award is not sufficient to support waiver. *Beta Systems*, 838 F.2d 1184-85; *LaBarge Products Inc. v. West*, 46 F.3d 1547, 1550 (Fed. Cir. 1995).[8] In addition, DESC in fact knew of *MAPCO* at the time it was

---

[8] In *Beta Systems*, the solicitation provided for the use of Bureau of Labor Statistics ("BLS") Index "Machinery and Equipment, Code 11." 838 F.2d at 1184-85. The contractor, however, proposed using a different BLS index "based on BLS producer price[s] and wage indices, with the index for 'aluminum mill shapes' weighted as 61% of the total." *Id.* at 1185. Because the BLS index in the solicitation was specifically identified by name and number, and therefore its components readily discernible, and because the offeror proposed using a different and specifically designated BLS index that more directly captured the offeror's principal raw material cost (aluminum), the offeror clearly was aware of all of the relevant facts when it elected to enter the contract with the BLS index originally identified in the solicitation. *Id.* As this Court recently explained in *Calcasieu Refining Company v. United States*, No. 02-1219 (Fed. Cl. July 31, 2003): "Defendant finds *Beta Systems* inapposite because the aggrieved party objected to the clause in the solicitation. That fact was immaterial to the court's holding.
(cont'd)

decided, having been the defendant, but nonetheless "thumbed its nose" at this Court's decision and subsequently awarded Wyoming two contracts without seeking a FAR deviation. At a bare minimum, DESC's "unclean hands" preclude the assertion of a waiver defense in the face of mere delay by Wyoming.

As to the pre-*MAPCO* contracts, the only possible basis for finding waiver is the notion (suggested by the Court at pp. 21-22 of its opinion) that, after *MAPCO* was issued, Wyoming's failure to sue immediately is "willful" conduct that has the effect of "piggybacking" the pre-*MAPCO* contracts onto the post-*MAPCO* contracts. As we explain in response to question three, however, it is well settled that a party's delay in filing suit will not serve as a bar unless there is a clear showing of actual prejudice to the other party.

**Question 2: <u>Is A Hearing Or Trial Necessary In Order To Develop A Factual Record On The Issue of Waiver?</u>**

For the reasons discussed above, even Wyoming's actual knowledge of *MAPCO* would not support a finding of waiver, because the mere announcement of the *MAPCO* decision did not create a "right" waivable by Wyoming. Therefore, it is not necessary to hold a hearing to determine whether Wyoming actually knew of *MAPCO*. Moreover, to the extent the Court has

---

(... cont'd)

Waiver does not hinge on the fact that the contractor previously had objected to the clause at the contract's signing. Defendant's argument actually supports plaintiff's contention: In *Beta Systems* plaintiff knew that the clause was illegal at the contract's inception, and here plaintiff claims that it lacked that knowledge." Slip Op. at 17.

Similarly, in *LaBarge*, the plaintiff learned of the basis of illegality during another party's bid protest but *before* the contract was awarded to it. 46 F.3d at 1550 ("On May 6, 1985, the GAO denied the Victaulic protest. Thereafter, on June 21, the Army awarded the coupling contract to LaBarge at its best and final offer price.") The plaintiff in *LaBarge* clearly could have raised the illegality after the protest and before accepting the award, but chose not to. *Id.* Nonetheless, waiver was not found. *Id.* 1552. *See also Chris Berg, Inc. v. United States*, 426 F.2d 314, 317-18 (Ct. Cl. 1970)(contractor did not waive claim despite entering the contract after government illegally refused to permit contractor to correct its bid.)

Of course, underlying the rule that knowledge of an illegality prior to contract award does not result in waiver is the broader principle that a contractor is precluded from entering a contract with the government under reservation of rights concerning one of the government's own non-negotiable clauses. *E.W. Bliss Co. v. United States*, 77 F.3d 445, 448 (Fed. Cir. 1996); App. 293.

suggested that Wyoming's delay in filing suit following *MAPCO* can be the basis for a waiver, we show in response to question three, below, that a party's delay in filing suit is addressed exclusively under the "laches" doctrine, and requires a showing of prejudice by the opposing party. There may be a need to hold a hearing on the narrow issue of whether DESC was prejudiced (see, *infra*, at 13-14), but not on any other issue.

**A.**

If, however, the Court holds that Wyoming's actual knowledge of *MAPCO* could support a waiver, no such finding can be made on the current record. The unrebutted facts establish that Wyoming was not aware of DESC's illegal prices, and that it would not have entered any of the contracts had it known of DESC's violation of the law. (Aug. 7, 2003 Order at 21.) David Miller, Wyoming's Vice President of Accounting and Administration, states that he was "not aware that the price escalators in the military fuel contracts were illegal," and that "if DESC had informed [him] that the price escalators in the military fuel contracts were illegal [he] would not have entered into the contracts with illegal price escalators." App. 1200. This evidence precludes any finding on the present record that Wyoming had knowledge sufficient to support a waiver of its claims. *See generally Hosey v. Interstate Commerce Commission,* 1997 U.S. App. LEXIS 34247, at *7 (Fed. Cir. Dec. 8, 1997) (the "intention to make a waiver and the extent of [a parties'] knowledge of his rights are factual" questions).

At best, on the present record, DESC could assert that waiver arose from Wyoming's decision to remain silent following *MAPCO*. However, "silence is insufficient to support a conclusion of waiver as a matter of law," *In re Calore Express Co.,* 288 F.3d 22, 38 (1st Cir. 2002), and "[w]aiver does not occur merely if a plaintiff is aware of the defendant's infringement but fails to act." *ABC, Inc. v. Primetime 24,* 17 F. Supp. 2d 478, 485 (M.D.N.C. 1998), *aff'd in part and rev'd in part*, 184 F.3d 348 (4th Cir. 1999). *See also Colley v. Conseco Medico Ins. Co.*, 11 Fed. App. 487, 491 (6th Cir. 2001) ("conduct that does not express any intent to relinquish a known right is not a waiver, and a waiver cannot be inferred by mere silence"). Even if the Court were to consider Wyoming's alleged silence, the record is devoid of evidence

sufficient to find the "clear, decisive, and unequivocal conduct indicating an intent to waive" that is necessary to find an implied waiver. *Primetime,* 17 F. Supp. 2d at 485.

If the Court determines that it cannot finally resolve the issue of waiver on the present record, a hearing would be necessary to determine the actual state of Wyoming's knowledge and intent. Wyoming would be entitled to present evidence on the issue of what Wyoming knew, when Wyoming knew it, what Wyoming intended by its actions or inactions, and why Wyoming waited until after the Federal Circuit's decision in *Barrett* to submit its claims to the contracting officer. The record is simply insufficient to rule against Wyoming on any of these issues, and, therefore, insufficient to hold that Wyoming waived its claims.

**B.**

The Court's discussion of imputation suggests that the question whether to impute knowledge of *MAPCO* may be a factual issue that depends on the reasonableness of imputing a trial court decision to a particular contractor. (Aug. 7, 2003 Order at 21.) Although we disagree that imputation can turn on the sophistication of the party to be charged (see, *supra*, at 3), if the Court so holds, we submit that a hearing is necessary before the Court can impute knowledge of *MAPCO* to Wyoming. The present record does not contain any evidence establishing that it was unreasonable for Wyoming not to know of *MAPCO*. Wyoming contracts with DESC as small business, see, e.g., App. 120 (referencing "SMALL BUSINESS SET-ASIDE"), and there is nothing in the record that would support a finding that Wyoming read or followed the decisions of this Court, or that the refining industry generally did so. If imputation turns on these types of factual issues, Wyoming should have an opportunity to show that, given its size, limited involvement in government contracting, and lack of a general counsel, it is unreasonable to impute knowledge of the *MAPCO* decision to it.

**C.**

Finally, Wyoming alleges that DESC knowingly misrepresented the legality of its prices in negotiating contracts. Complaint ¶ 37. Such misrepresentation, if established at trial, would bar a waiver defense on the grounds of unclean hands. Moreover, the record is bereft of

evidence explaining why DESC continued to use its illegal clause in two of Wyoming's contracts even after *MAPCO*, a decision of which it was clearly aware. Discovery and trial are necessary on these issues as well before Wyoming could be found to have waived its claims.

**Question 3: Does The Doctrine Of Laches Apply In This Case, And, If So, Whether The Court May Raise The Issue *Sua Sponte*? Assuming Laches Applies, Is A Hearing Or Trial Necessary To Resolve The Matter?**

In its August 7, 2003 Opinion, the Court suggested that Wyoming's entry into the two post-*MAPCO* contracts "tilt[s] the scale measuring plaintiff's conduct toward waiver rather than laches because, to the court, plaintiff's dilatory conduct appears willful." (Aug. 7, 2003 Order at 21.) Wyoming respectfully submits that its delay in bringing suit for several years after *MAPCO* does not mean that Wyoming engaged in a species of "willful" conduct that, by itself, supports waiver and relieves DESC of the burden of establishing a laches defense. It is universally held that mere delay in seeking judicial relief, by itself, is insufficient to bar a claim. Whether (as is usually the case) courts describe the effect of delay using the terminology of "laches"[9] or (less frequently) "waiver,"[10] the legal test is the same: delay *must* be coupled with prejudice to the opposing party before a court will bar a dilatory filing. *Id.*[11]

It is hornbook law that a party must show prejudice in order to bar a suit or a counterclaim that was delayed for a lengthy period of time.[12] "Where no prejudice to the

---

[9] *See, e.g., National R.R. Passenger Corp. v Morgan*, 536 U.S. 101, 121 (2002) (delay in filing discrimination claim).

[10] *See, e.g., Thyssen, Inc. v. Calypso Shipping Corp.*, 310 F.3d 102, 105 (2d Cir. 2002), *cert. denied*, 123 S. Ct. 1573 (2003) (delay in filing arbitration).

[11] Wyoming believes there are serious questions concerning whether the Court may, in effect, plead a claim or an affirmative defense, such as laches, on behalf of party. *The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25 (1913); *Bell v. Hood*, 327 U.S. 678, 681 (1946). Wyoming believes the burden rests with DESC to plead the defense of laches.

[12] We note that, in addition to showing prejudice, DESC also must also show that Wyoming's delay was "unexcused and unreasonable." *Aukerman*, 960 F.2d at 1032. DESC cannot make that showing. No statute of limitations applied to these claims, as Congress did not impose a limitations period on CDA claims (and then only prospectively) until 1994. Moreover, the substantive law underlying Wyoming's claim had not been finally determined, as the *MAPCO* decision left unresolved whether there was a remedy for DESC's illegal prices. In these

(cont'd)

defendant has ensued from the mere passage of time, there should be no bar to relief." *Gardner v. Panama R. Co.*, 342 U.S. 29, 31 (1951). The Federal Circuit has hewed closely to this rule. Allegedly stale claims are not barred "unless the offended party has been unmistakably prejudiced by the delay in the assertion of the claim." *S.E.R., Jobs for Progress, Inc. v. United States*, 759 F.2d 1, 9 (Fed. Cir. 1985). *See also Wanlass v. General Elec. Co.*, 148 F.3d 1334, 1337 (Fed. Cir. 1998); *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1032 (Fed. Cir. 1992) (en banc); *Cornetta v. United States*, 851 F.2d 1372, 1378 (Fed. Cir. 1988) (en banc). Even a lengthy delay does not eliminate the prejudice requirement. *Tyler v. United States*, 600 F.2d 786, 789 (Ct. Cl. 1979).[13]

The delaying party's knowledge of its claim does not alter the requirement of showing prejudice. For example, in *Albemarle Paper Co. v. Moody*, 422 U.S. 405 (1975), the Supreme Court held that the defendant was required to show prejudice before the plaintiffs' five-year delay in seeking back pay would bar their claims. *Id.* at 423-24. The plaintiffs knew of the factual and legal basis for their claims for back pay at the beginning of the five-year period. *Id.* In *Cornetta*, the Federal Circuit, sitting *en banc*, held that the plaintiff's seven-year delay in suing for military reinstatement and back pay was not barred unless the government could show prejudice, even though the plaintiff knew he had a claim as soon as he was discharged. 851 F.2d at 1378. And in *Aero Union Corp. v. United States*, 47 Fed. Cl. 677 (2000), the court held that the government's eight-year delay in bringing suit against a contractor would not bar the claim unless the contractor could show prejudice, despite the fact that the government knew of the basis for its claim at the beginning of the period. *Id.* at 687-88. Wyoming's delay in suing is no

---

(... cont'd)

circumstances, it was not unreasonable for Wyoming to wait to bring its claims until the law was clarified in *Barrett*.

[13] The requirement of showing prejudice in addition to delay applies in a variety of contexts. For example, when a party delays filing a motion to compel arbitration, the key consideration is prejudice to the other party. *See, e.g., Thyssen*, 310 F.3d at 105. A showing of prejudice also is required when a party delays filing an affirmative defense. *See, e.g., Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1445 (6th Cir. 1993).

more "willful" than that of the workers in *Albemarle*, the officer in *Cornetta,* or the government in *Aero Union*, and in none of these cases was either laches or waiver found due to delay alone.

Moreover, the Federal Circuit in *Cornetta* squarely held that a party seeking to bar a suit due to delay must prove *actual* prejudice rather than rely on a presumption of prejudice. 851 F.2d at 1378. The court pointedly criticized earlier decisions that had presumed greater prejudice from longer delay, observing that "exalting the elapsed time over the prejudice component comes perilously close to making laches a one dimensional defense, contrary to its very raison d'etre." *Id.* at 1379. If Wyoming were held to have waived its claims simply because *MAPCO* came down, the requirement of showing actual prejudice due to delay would be read out of the law.

Here, DESC cannot prevail on a laches defense because it cannot show economic prejudice resulting from Wyoming's delay in bringing its claims. DESC argues that prejudice arises from the fact that it awarded contracts to Wyoming at Wyoming's offer price and decided to forego awarding contracts to other bidders. This is little more than an assertion that DESC would have awarded the same illegal contract to another contactor if Wyoming had not accepted them – hardly the type of prejudice cognizable to support waiver. In addition, DESC concedes that its intent was to pay fair market value for the fuel it purchased, App. 284, and paying Wyoming the fair market value it seeks here is no different that paying fair market value to a different contractor at the time of the contracts. In any event, DESC's asserted loss of the ability to contract with a different party does not stem from Wyoming's delay in bringing suit, as this loss occurred when the contracts were entered. *See Wanlass*, 148 F.3d at 1337 (defendant must show that "the *delay* resulted in material prejudice or injury") (emphasis added) (citation omitted).

DESC also contends that if Wyoming had protested "anytime prior to submitting its belated claims," it could have obtained a deviation or revised the EPA clause. (DESC's Supp. Br. at 4-5.) The record belies that. DESC did *not* seek a deviation or revise its clause when MAPCO Alaska Petroleum first objected to DESC's pricing clause as "coerced" in 1984, App. 289, or when MAPCO later filed a claim with the contracting officer challenging the legality of

DESC's price in 1988. 27 Fed. Cl. at 407. Only *after* DESC lost *MAPCO* in 1992 did it seek a deviation, and then it did so illegally. *See La Gloria Oil & Gas Co. v. United States*, 56 Fed. Cl. 211, 219 (2003) (holding that individual deviations applicable to 1995 and 1996 contracts were unlawful). As for revising the EPA clause, DESC *never* did that, despite facing several challenges to the clause from MAPCO and other contractors throughout the mid-1990s. *See Barrett Refining Co. v. United States*, 42 Fed. Cl. 128, 133 (1998) (claims filed with contracting officer in 1995 and 1996); *Pride Cos. v. United States*, 2000 U.S. Claims LEXIS 213, at *1 (Fed. Cl. May 10, 2000) (claims filed with contracting officer in 1995). Clearly, any failure to protest by Wyoming did not result in economic prejudice to DESC.

DESC contends that it *needs* no further discovery or hearing to establish economic prejudice as a basis for its laches defense. (DESC's Supp. Br. at 6-7.) Thus, DESC has put forward its best evidence of economic prejudice, and, for the reasons discussed above, it cannot show prejudice resulting from delay. Because DESC must "establish that there was no genuine issue of material fact about the delay or the prejudice" in order to prevail on laches, laches cannot be resolved in favor of DESC at this time. *Wanlass*, 148 F.3d at 1337.

Finally, DESC contends that it might be able to show "evidentiary" prejudice, which DESC asserts may arise from a defendant's inability fully to defend itself as a result of loss of records, death of witnesses, or unreliability of memory. *Aukerman*, 960 F.2d at 1033. DESC has offered only speculation, but no evidence, to support this assertion. DESC bears the ultimate burden of showing prejudice, *Cornetta* 851 F.2d at 1380. Therefore, discovery and a hearing would be necessary before the issue of laches can be finally resolved. If DESC cannot show an absence of a genuine issue of material fact about the existence of evidentiary prejudice, any laches defense must fail.

## CONCLUSION

For the foregoing reasons, knowledge of *MAPCO* may not be imputed to Wyoming such that waiver would apply, waiver may not be found without a trial, and laches does not apply and may not be found without a trial.

Respectfully submitted,

s/ J. Keith Burt
J. Keith Burt
Mayer, Brown, Rowe & Maw
1909 K Street, N.W.
Washington, D.C. 20006
(202) 263-3208 (Phone)
(202) 263-5208 (Fax)

Attorneys for Plaintiff,
Hermes Consolidated, Inc.,
Doing Business As
Wyoming Refining Company

*Of Counsel:*

Adrian L. Steel, Jr.
Mayer, Brown, Rowe & Maw
1909 K Street, N.W.
Washington, DC 20006

August 22, 2003