# In the United States Court of Federal Claims

**No. 02-1460 C**
**(Filed: November 3, 2003)**

**HERMES CONSOLIDATED, INC., d/b/a WYOMING REFINING COMPANY,**

***Plaintiff,***

**v.**

**THE UNITED STATES,**

***Defendant*.**

**Government contract; Jet fuel; Federal Acquisition Regulations; Waiver; Laches**

*J. Keith Burt*, Mayer, Brown, Rowe & Maw, Washington, DC, attorney of record for the plaintiff, *Adrian L. Steel, Jr., Nicole H. Freighted*, Mayer, Brown, Rowe & Maw, Washington, DC, of counsel.

*Steven J. Gillingham*, Department of Justice, Commercial Litigation Branch, Civil Division, *Bernard A. Duval*, Defense Energy Support Center, Fort Belvoir, VA, of counsel.

## OPINION AND ORDER

**Block, *Judge*.**

Before this court is the issue of how to apply the venerable equitable doctrine of waiver. As a bedrock of the Anglo-American law of equity, "waiver" has been defined as an "intentional relinquishment or abandonment of a known right or privilege." *E.g., Johnson v. Zerbst*, 304 U.S. 458, 464, 82 L. Ed. 1461, 58 S. Ct. 1019 (1938). Once a litigant fails to timely pursue or defend a known claim, equity forbids a court from enforcing the right seeking to be vindicated, and the action is thereby dismissed.

What exactly constitutes "knowledge" of a right, the failure of which to seek to vindicate constitutes a waiver, is the crux of the issue facing the court. More specifically, under the facts of this case can knowledge of the law be imputed, or is actual knowledge of the law necessary for a waiver to be found? The English jurist, antiquary, and author John Selden (1584-1654) explained why knowledge of the law is generally presumed under our common law tradition: "Ignorance of the law excuses no man; not that all men know the law, but because 'tis an excuse every man will plead, and

no man can tell how to refute him."[1]

The defendant contends that plaintiff contractor had waived its breach of contract claim under the case law of the Federal Circuit by failing for years to protest allegedly-unlawful contract clauses. Plaintiff, on the other hand, cites various Federal Circuit cases for the proposition that where a contract clause drafted by the government is inconsistent with the law, the impropriety cannot be waived regardless of whether the plaintiff protested or accepted the clause, or how long the plaintiff sat on its rights.

This court in *Hermes Consol., Inc. v. United States*, 2003 WL 22416284 (Fed. Cl., Aug. 7, 2003)("*Hermes I*"), denied the parties' cross-motions for partial summary judgment filed pursuant to Rule 56 of the Rules of the Court of Federal Claims. The court requested the parties to submit supplemental briefing addressing the issue of waiver presently being considered. Based upon a review of both the supplemental briefing and the applicable case law, the court concludes that plaintiff waived its right to commence this action as a matter of law. Consequently, defendant's motion for partial summary judgment is hereby granted and plaintiff's corresponding cross-motion denied.

## I. Background

The reader is referred to the court's opinion in *Hermes I* for a more detailed discussion of the relevant facts and issues of law. In essence, the case, an action for breach of contract, arose out of nine separate contracts for the sale of jet fuel between plaintiff Hermes Consolidated, Inc., d/b/a. Wyoming Refining Company ("Wyoming"), and the United States military, acting through the Defense Energy Supply Center ("DESC").

Between 1988 and 1994, Wyoming entered into nine contracts with the DESC to provide the government with jet fuel for military purposes. Each contract contained an "Economic Price Adjustment" ("EPA") clause which tied the price of the contracts at issue to the fluctuating prices published in Petroleum Marketing Monthly ("PMM").[2] Under the EPA clauses, if the average price for fuel in a given region increased (as recorded in the PMM), Wyoming made more money per gallon of fuel sold, and vice-versa if the PMM average decreased. These PMM-based EPA clauses, however, were found unlawful in 1992 when this court ruled in *MAPCO Alaska Petroleum, Inc. v. United States*, 27 Fed. Cl. 405 (1992) that the clauses violated the Federal Acquisition Regulations ("FAR"). Since the *MAPCO* decision, various other decisions of this court have followed its reasoning.[3]

---

[1] John Selden (1584-1654) from *Table Talk Law,* as *quoted in* BARTLETT'S FAMILIAR QUOTATIONS, 10th ed. 1919 (John Bartlett (1820–1905)).

[2] The PMM is a publication issued by the Department of Energy which contains averages of every fuel refiner's sales prices across the nation broken down by region.

[3] *See Tesoro Hawaii Corp. v. United States,* 2003 WL 22416288 (Fed. Cl. Sept. 15, 2003)*; Calcasieu Ref. Co. v. United States*, No. 02-1219 C (Fed. Cl. July 31, 2003); *Berry Petroleum v. United States*, No. 02-1462 C (Fed. Cl. June 10, 2003); *La Gloria Oil & Gas Co. v. United States*, 56 Fed. Cl. 211 (2003); *Gold Line Ref., Ltd. v. United States*, 54 Fed. Cl. 285 (2002) (*Gold Line II*);

Finding the reasoning in *MAPCO* and particularly *Gold Line Ref., Ltd. v. United States*, 54 Fed. Cl. 285 (2002) (*Gold Line II*) compelling, this court likewise found the clauses unlawful. *Hermes I*, 2003 WL 22416284 at *6-8. Nevertheless, the court found troubling *MAPCO's* waiver analysis. Relying primarily on *Beta Sys., Inc. v. United States*, 838 F.2d 1179, 1185-86 (Fed. Cir. 1988) and *Chris Berg, Inc. v. United States,* 426 F.2d 314, 317 (Ct. Cl. 1970), the *MAPCO* court opined that when a contract contains a provision the government is unauthorized to make, the contractor is not bound by estoppel or waiver: "'[W]hen a contract clause drafted by the Government is inconsistent with law, whether the appellant inquired, protested, accepted or otherwise assumed any risks regarding the same is not controlling; the impropriety will not be allowed to stand.'" *Id.* at *5 (quoting *MAPCO*, 27 Fed. Cl. at 426 (internal quotations omitted)).

This court noted that the Federal Circuit *seems* to be of two minds on this issue in that *Whittaker Elec. Sys. v. Dalton*, 124 F.3d 1443 (Fed. Cir. 1997); *E. Walters & Co., Inc. v. United States*, 217 Ct. Cl. 254, 576 F.2d 362 (1978)(*per curiam*), as well as *American Telephone and Telegraph Co. v. United States*, 307 F.3d 1374 (Fed. Cir. 2002) (*AT&T V*), may be cited for the very opposite of the *Beta/Chris Berg* line of cases, that is: the doctrine of waiver precludes a contractor from challenging the validity of a contract under an unlawful regulation or other illegality where the contractor fails to raise the problem prior to execution or litigation. *Id.* at *1. *See AT&T V*, 307 F.3d at 1381; *Whittaker Elec. Sys. v. Dalton*, 124 F.3d at 1446*; E. Walters & Co., Inc. v. United States*, 217 Ct. Cl. 254, 576 F.2d at 367-68. Nevertheless, the court rejected the notion of a contradiction, characterizing the so-called split of authority in the Federal Circuit as only apparent and not factual ("the precedent of the Federal Circuit *appears* to be of two minds in cases similar to the one *sub judice*," *Hermes I*, 2003 WL 22416284 at *1 (emphasis added), "there also *appears* to be conflicting precedent from the Federal Circuit," *id.* at *10(emphasis added)).

Construing the *Beta/Chris Berg* line of cases to mean that government "should not prosper because of its illegalities," this court opined that "this should not, and cannot, mean that a contractor has carte blanche to behave in any [manner] it wishes. These cases are not a court-made contractor's functional equivalent of 007's licence to kill." *Id.* at *18. "Simply put, the Federal Circuit in these cases has not altogether abolished the doctrine of waiver. To rule as such would allow the devious to take undue advantage of governmental error, no matter how innocent, and prey on the public fisc." *Id.*

The key factual distinction between *Beta Sys., Inc.*, *Chris Berg*, and *Whittaker, E. Walters & Co.*, *AT&T V*, as well as the case at bar, "is that in the former cases the contractors either complained during contract formation or, at the very least, at an early stage in the history of the conflict." *Id*. Clearly, the contradistinction is in the balancing of the equities. These cases are cases in equity seeking breach of contract damages based on reformation. Examining the waiver issue, the courts in the *Beta/Chris Berg* line of cases found the government's bad behavior the weightier in the

---

*Barrett Refining Corp. v. United States,* 45 Fed. Cl. 166, *aff'd in part, vacated in part*, 242 F.3d 1055 (Fed. Cir. 2001); *Pride Companies, L.P. v. United States,* 2000 U.S. Claims LEXIS 213 (Fed. Cl. May 10, 2000); *Gold Line Ref., Ltd. v. United States,* 43 Fed. Cl. 291 (1999) (*Gold Line I*). *But see Williams Alaska Petroleum, Inc. v. United States,* 2003 U.S. Claims LEXIS 267 (Fed. Cl. Oct. 1, 2003).

equilibrium of equities. In *Whittaker*, *E. Walters & Co.* and *AT&T V*, the contractor's conduct was found the more malefic.

In the case at bar this court recognized that Wyoming, "who was and is a sophisticated government contractor,"

> astonishingly waited fourteen years after entering the first PMM-based contract before suing in this court, and waited eight years after entering the last PMM-based contract before litigating. Wyoming never complained that it was not making a profit. And Wyoming never complained that the contract it was fulfilling was in part unlawful. Wyoming commenced this action, the court must add, a full ten years after the *MAPCO* decision was rendered. Clearly, it knew or should have known that the EPA clause was suspect. Again, this conduct is far more egregious than that which occurred in either *Beta Systems, Inc*. or *Chris Berg*.

*Id.* Consequently, the court observed that the case *sub judice* fell "under the ancient doctrine of waiver." *Id.*(quoting *Ling-Temco-Vought, Inc. v. United States*, 201 Cl. Ct. 135, 146, 475 F.2d 630, 637 (1973)("[W]herever a contract not already fully performed is continued in spite of a known breach, the wronged party cannot avail himself of that excuse . . . . one side cannot . . . act as if the contract remains fully in force . . . run up damages, and then suddenly go to court.").

The court noted that there exists complicating factors perhaps requiring a factual laches hearing because many of the contracts were pre-*MAPCO*. *Id.* at *20. But in this case:

> the two post-*MAPCO* contracts tilt the scale measuring plaintiff's conduct toward waiver rather than laches because, to the court, plaintiff's dilatory conduct appears willful. Simply put, under the circumstances of this case, the pre-*MAPCO* contracts 'piggy-back' onto the post-*MAPCO* contracts for purposes of the doctrine of waiver. There appears to be no justification for plaintiff not to sue on *all* of its contracts once *MAPCO* was decided by this court.

*Id*. Be that as it may, the court requested supplemental briefing on the waiver and laches issues because: (1) the Federal Circuit's law on waiver was not clear "as to whether the traditional presumption of knowing the law extends to trial court decisions such as *MAPCO*," *id*., and (2) the only evidence in the record of actual knowledge by Wyoming of *MAPCO* was an implicit denial of knowledge by David R. Miller, Wyoming's Vice President of Accounting and Administration, the man responsible for negotiating the contracts at issue in this case, *id*. His declaration stated "in negotiating and entering into Wyoming's military fuel contracts with the DESC, I was not aware that the price indexes in Wyoming's contracts were illegal." *Id.* The parties were asked to respond to the following questions:

> 1. In the context of this case, can knowledge of this court's decision in *MAPCO* be imputed to Wyoming such that waiver would apply?
>
> 2. Is a hearing or trial necessary in order to develop a factual record on the issue of waiver?

3. Does the doctrine of laches apply in this case, and if so, whether the court may raise the issue *sua sponte*? Assuming laches applies, is a hearing or trial necessary to resolve the matter?

## II. Discussion

1. The Parties' Contentions.

Echoing the ancient equity maxim,[4] defendant argues in its supplemental briefing that Wyoming's specific knowledge of *MAPCO* is not pertinent to the issue of waiver because ignorance of the law is no excuse. Def.'s Supplemental Br. at 1. It is not a trial court's opinion of what the law consists of that is at issue, but the law itself. Thus, a court opinion is only relevant to the extent that it accurately states the law. Defendant basis this claim on *Catawba Indian Tribe of South Carolina v. United States*, 982 F.2d 1564, 1570 (Fed. Cir. 1993), where the court stated, "any later judicial pronouncements simply explain but do not create, the operative effect of the law." Def.'s Supplemental Br. at 1-2 (citing *Jones v. United States*, 6 Cl. Ct. 531, 533 (1984)("In dismissing plaintiff's claim, the court noted that the Supreme Court did not make the law, but merely 'threw judicial light upon what had been the law for more than eighty years, as everyone was bound to know.'")(quoting *Idle v. United States*, 25 Ct. Cl. 401, 408 (1890)).

The content of the relevant FAR provisions were fixed well before the first contract at issue, therefore, defendant claims that plaintiff is presumed to have knowledge of the FAR.[5] Accordingly, defendant claims that plaintiff's silence for ten years after *MAPCO* is a waiver of any potential right to sue. Def.'s Supplemental Br. at 2.

Defendant rejects plaintiff's contention that benefits provided by law may not be waived until appellate-level courts opine as to the meaning of the law. Def.'s Reply to Pl.'s Supplemental Br. at 2. The plaintiff's position is characterized as contrary to the previous case law of this court and the Federal Circuit. *Id*. at 2. *See generally AT&T V*; *Whittaker Elec. Sys.; E. Walters & Co., Inc.*

Defendant further argues that at *no* time during the twelve-plus years of performance did Wyoming ever object to the disputed contract provision. Def.'s Mot. for Partial Summ. J. at 26. To be sure, it certainly had the opportunity, and the applicable statute provided plaintiff many occasions to review and reject the EPA provision. Def.'s Supplemental Br. at 3 (citing 31 U.S.C. § 3552 (2002)). Indeed, the government relied on plaintiff's lowest bid to award the various contracts now in dispute.

---

[4] More specifically, the ancient equity maxim is *ignoranti juris non excusat*. This is commonly translated as "ignorance of the law is no excuse." BLACK'S LAW DICTIONARY 749 (7th ed. 1999). This is not a new proposition. *See* Mark D. Yochum, *The Death of a Maxim: Ignorance of Law is No Excuse*, 13 St. John's J. L. Comm. 635, 644 & n.55 (1999)(stating that the principle that ignorance of the law is no excuse derived from Roman law).

[5] The FAR provisions are implicitly incorporated into every federal government procurement contract. *See Chris Berg,*, 426 F.2d at 317.

To the contrary, plaintiff argues, before waiver may be evoked it must be demonstrated that it had actual, not an implied, that is, imputed, knowledge of the law, since the doctrine of waiver requires an *intelligent* abandonment of a *known* legal right. Pl.'s Supplemental Br. at 5(citing *United States v. Golitshek*, 808 F.2d 195, 203 (2d Cir. 1986).) Thus, unless the law is "clearly established," knowledge of the law may not be imputed. Pl.'s Supplemental Br. at 2. To the plaintiff, this equates to a decision from either the Supreme Court or another appellate court. Pl.'s Supplemental Br. at 2(citing *Thomas v. Roberts*, 261 F.3d 1160, 1170 (11th Cir. 2001)). Plaintiff contends that this position is justified because trial court decisions are often reversed or superseded, subjecting third parties to inconsistent standards. Pl.'s Supplemental Br. at 2 (citing *United States ex. rel. Clark v. Anderson*, 356 F. Supp. 445, 451 (D. Del. 1973)).

In a "what is good for the goose, is good for the gander" argument, plaintiff further maintains that if knowledge of trial court decisions may be imputed for waiver analysis, this imputation must also extend to those aspects of the law that are to plaintiff's advantage. Pl.'s Supplemental Br. at 6(citing *Yerxa v. United States*, 11 Cl. Ct. 110 (1986), *aff'd*, 824 F.2d 978 (Fed. Cir. 1987)). Accordingly, plaintiff contends that if knowledge of the *MAPCO* decision is to be imputed, it would carry with it the finding that DESC's violation of the law cannot be waived. Pl.'s Supplemental Br. at 6. While being aware of *MAPCO*, DESC awarded two contracts to plaintiff without even seeking a FAR deviation. *Id.* at 7-8. Consequently, plaintiff contends that such conduct by DESC bars a waiver defense because of the agency's "unclean hands." *Id.* at 8.

Countering this tit-for-tat argument, defendant alleges that it acted in good faith at all times. Indeed, defendant claims it sought a change of its EPA clauses through the FAR deviation process after the *MAPCO* decision in 1992. Def.'s Mot. for Partial Summ. J. at 6. While the defendant acknowledged the court's ruling in *MAPCO*, DESC obtained individual deviations from the requirements of FAR 16.203-1 and 16.203-4(a) until DESC were able to obtain a class deviation that allowed DESC to use industry market prices for EPA purposes.[6] App. to Def.'s Mot. for Partial Summ. J. at 1-2 (ex.12). In addition, a confirmatory amendment to the DLA's FAR supplement was published in the Federal Register in 1999, which expanded the use of EPA's based on market price references. App. to Def.'s Mot. for Partial Summ. J. at 1 (ex. 14).

Finally, while not objecting to this court's characterization of Wyoming as a "sophisticated contractor," plaintiff asserts that the sophistication of a party may not be used in imputing the law because this would lead to differing laws of waiver depending on the status of the party. Pl.'s Supplemental Br. at 3. Plaintiff cites no authority for this proposition.

---

[6] Specifically, DESC sought approval to use EPA clauses:

> derived from sales prices in the market place, quotes, or assessments for one of several items or commodity groups as reported or made available in a consistent manner in a publication, electronic data base, or other form, by an independent trade association, Governmental body, or other third party independent of the contractor.

App. to Def.'s Mot. for Partial Summ. J. at 2 (ex.12).

2. Did Wyoming Waive Its Claim?

The court essentially agrees with defendant and concludes that plaintiff, through its failure to timely prosecute its breach of contract claim, knowingly waived such claim as a matter of law. A legal right or privilege must be timely asserted. Simple fairness dictates that a party should not sit on its hands. Undue delay taints the reliability of evidence and robs memory and thus veracity from witnesses. And significant harm may be the product of long delays particularly when one party justifiably relied on the expected and legally enforceable promises and performances of the other.

As such, to deter behavior which strikes at the integrity of the judicial process, courts sitting in equity have refused to enforce stale claims when circumstances demonstrate an "intentional relinquishment or abandonment of a known right or privilege." *Johnson*, 304 U.S. at 464, 82 L. Ed. 1461, 58 S. Ct. 1019 (1938). And the equitable doctrine of waiver has long been applied to "any provision, either of a contract or of a statue, intended for [a party's] benefit." *Shutte v. Thompson*, 82 U.S. 151, 159, 21 L. Ed. 123 (1872). It is thus clearly applicable to the FAR provision at play in this case.

The doctrine of equity requires fairness to both parties to litigation. Accordingly, because the consequences of waiver can be draconian – at times the dismissal of an entire action – the doctrine requires that the party against whom waiver is being evoked possesses a conscious awareness (or in the words of the Supreme Court in *Johnson*, an "intelligent" or "knowledgeable" state of mind) in the abandonment of a right or a privilege. Demonstrating scienter as a practical matter is difficult, especially in situations such as the case at bar where corporate intent must be ascertained. But the law if anything is practical, in Justice Frankfurter's characterization the "institutionalised medium of reason."[7] To that end waiver may be established either through an express statement or by implication through a party's conduct inconsistent with an intent to assert a right. *See Mooney v. City of New York*, 219 F.3d 123, 131(2d Cir. 2000)(in determining whether complainant's actions constituted a waiver of his federal maritime claims, the court stated that "a waiver need not be express, but my be inferred from the conduct of the parties"); *Garfinkle v. Weil*, 672 F.2d 1340, 1347 (11th Cir. 1982) ("waiver may be express, or... implied from conduct").

Since waiver can be found by implication, it is wholly reasonable to take into consideration such factors as status, that is, the sophistication and other defining and relevant characteristics. *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S. Ct. 1019, 1023 (1938)("the determination of whether there has been an intelligent waiver of right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused."); *see AT&T V*, 307 F.3d at 1380 (sophisticated contractor AT&T waived right to complain about fixed-price term of contract because it never sought price adjustment clause during negotiation phase). *See generally* 31 C.J.S. *Estoppel and Waiver* § 67 at 433 (1996)("factors to be considered in determining whether defendant has made an intelligent waiver of his rights include his age, experience, education, background, and intelligence."). This is so because waiver-by-implication

---

[7] Felix Frankfurter (1882-1965), from the collection compiled by www.quotationspage.com.

is determined objectively looking at the surrounding factual circumstances."[8] Plaintiff's unsupported proposition that applying such factors as sophistication to waiver analysis would result in differing law for different parties misses the point. There is only one law of waiver, but objective application of this doctrine obviously is dependent on the peculiar circumstance of a case.

An example of waiver-by-implication is the aphorism that ignorance of the law is no excuse. A fundamental premise of our legal system is that parties are presumed to know the law, and ignorance of the law is no excuse. *See, e.g.*, *Lambert v. California*, 355 U.S. 225, 228, 78 S. Ct. 240, 243 (1957)(citing *Shelvin-Carpenter Co. v. Minnesota*, 218 U.S. 57, 68, 30 S. Ct. 663, 666 (1910)); *United States v. Wilson*, 133 F.3d 251, 261 (4th Cir. 1997)(citing *Barlow v. United States*, 32 U.S. 404, 411, 8 L. Ed. 728 (1833)("it is a common maxim, familiar to all minds, that ignorance of the law will not excuse any person, either civilly or criminally)). This concept is also applied in the noncriminal, regulatory law context.

The leading case in this area is *Fed. Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 68 S. Ct. 1 (1947). In *Merrill*, two Idaho farmers replanted spring wheat on winter wheat acreage. After their crop was destroyed by drought, the Federal Crop Insurance Corporation, a wholly government-owned enterprise created by the Federal Crop Insurance Act, 7 U.S.C.A. §1508(a)(West 2003), refused to pay the loss because the destroyed acreage was reseeded spring wheat. *Merrill*, 332 U.S. at 382. Published regulations contained a provision that spring wheat planted on winter wheat acreage was ineligible for crop insurance. *Id.* at 385 (citations omitted). Apparently, the local agents of the corporation misled the Merrills' into believing that the spring wheat reseeded on winter wheat acreage was insurable. *Id.* at 382. The Merrills' correspondingly argued that they had no actual knowledge of the applicable regulation. *Id.* Nevertheless, despite the resulting hardship, the Supreme Court overturned the Idaho Supreme Court's determination of federal government liability. *Id.* at 386.

Important to our discussion is the recognition by the Court that despite the obvious unfairness and the hardships it might produce, not only is a party's knowledge of federal statutory law imputed, but so are the manifold regulations promulgated by agencies thereunder. The Court explained that it is simply impossible for Congress to address every problem and that therefore, there is a need for Congress to delegate to the experts in administrative agencies to respond through rulemaking. *Id.* at 384-385. Significantly, the Supreme Court noted the importance of the notice and comment procedure. To the Court, "everyone is charged with knowledge of the United States Statues at Large, [and] Congress has provided that the appearance of rules and regulations in the Federal Register gives legal notice of their contents." *Id.* at 384-85. *See Peters v. United States*, 694 F.2d 687, 696 (Fed. Cir. 1982)(contractor charged with knowledge of Forest Service procurement regulation because it had been published in the Federal Register, thus waiving its objection to retroactive contract modification).

---

[8] *Smith v. Socialist People's Libyan Arab Jamahiriya*, 101 F.3d 239, 243 (2d Cir. 1996)("an implied waiver might arise whenever an act has been taken under circumstances that would lead a reasonable observer to conclude that the act generally manifests an intent to waive, whether or not the actor had such intent in the particular case;" implied waiver is measured by an objective test). *See also AT&T* V, 307 F.3d at 1380.

Wyoming is presumed to have known of the law in this area. The FAR provision's meaning and effect were fixed at the time it was adopted.[9] *See Catawba Indian Tribe of South Carolina v. United States*, 982 F.2d 1564,1570 (Fed. Cir. 1993)("while the Supreme Court's pronouncement in 1986 might be relevant to fixing the time when the Tribe subjectively first knew what the Act meant, it is fundamental jurisprudence that the Act's objective meaning and effect were fixed when the Act was adopted"). Any later judicial pronouncement simply explain, but does not create, the operative effect. *Id*.(citing *Chevron U.S.A., Inc. v. United States* 923 F.2d 830, 834 (Fed. Cir. 1991), *Ide v. United States*, 25 Ct. Cl. 401, 408 (1890), *aff'd*, 150 U.S. 517, 14 S. Ct. 188, 37 L. Ed. 1166 (1893), and *Jones v. United States,* 6 Cl. Ct. 531, 532-33 (1984)).

In a very real sense, the *MAPCO* decision itself is irrelevant. What is important is that the unauthorized use of the PMM clause is clear. This is the position of this court in *Hermes I*. The *MAPCO* decision did not create any new law, it merely construed an existing regulation. The court agrees with defendant's assertion that "it defies reason to suggest that statutes and regulations contain no benefits that may be voluntarily waived, unless and until an appellate-level court interprets those statues and regulations." Def.'s Reply to Pl. Supplemental Br. at 2. Following Wyoming's logic would mean that enacted statutes and regulations would not place citizens on notice unless and until an appellate court reviewed and upheld them. This, of course, flies in the face of *Merrill* and its progeny, such as the Federal Circuit's decisions in *Peters* and *Catawba Indian Tribe*. This court simply cannot agree with plaintiff's flawed understanding of our basic jurisprudence.

Ironically, the position that the interpretation of the PMM-EPA clauses is clear is exactly the position that plaintiff argued in its cross-motion for partial summary judgement. Plaintiff cites numerous authorities in defending the proposition that the drafters of the FAR provisions were clear and "rejected establishing prices based on price indexes." Pl. Cross-Motion for Partial Summ. J. at 16 ("[T]he regulatory history of Far § 16.203 unambiguously establishes, the drafters of the FAR expressly considered and rejected DESC's interpretation of FAR § 16.203 as permitting the use of price adjustment clauses that base price adjustments on price indexes such as the PMM Indexes.") *Id.* at 18. As explained above, in all but one of the various factually-related cases considered by the Court of Federal Claims, the court has essentially agreed with plaintiff's contention that the PMM-EPA clauses are manifestly unauthorized. By arguing that it must have actual knowledge of *MAPCO* itself before waiver applies, plaintiff is now at least implicitly abandoning its prior position because not to do so now would fly in the face of *Merrill*'s constructive notice rationale.

Clearly Wyoming is a sophisticated contractor. It entered into nine separate contracts for jet fuel over a six-year span (1988-1994). It bid over and over on solicitations containing the same PMM clauses about which it now complains. Wyoming failed to protest the PMM clauses when it received a copy of the defendant's solicitation. Wyoming's willingness to proceed on the terms of the contract indicates that Wyoming acquiesced to the clauses and thus waived any right to sue. *See AT&T V*, 307 F.2d at 1381 (the proper time for contractor to raise issue is at the time of contract negotiation); *see also Whittaker Elec. Sys.*, 124 F.3d at 1446 ("The doctrine of waiver precludes a contractor from challenging the validity of a contract, whether under a DAR [defense acquisition regulation] or on any other basis, where it fails to raise the problem prior to execution, or even prior to litigation, on which

---

[9] The provisions of the FAR pertaining to the PMM clauses became effective on April 1, 1984, more than two years before the first contract at issue. Def.'s Supplemental Br. at 1 n.1.

it later bases its challenge.")(citing *United Int'l Investigative Servs. v. United States,* 109 F.3d 734, 738 (Fed. Cir.1997); *E. Walters & Co.*, 576 F.2d at 367-68). The law will not allow a party to reap the benefits of a contract and years later refuse to perform when the contract is no longer economically beneficial.

As stated, plaintiff Wyoming here has wholly failed to explain why it waited eight years between the time Wyoming entered the last PMM based contract (1994) and the time it filed suit (2002).[10] Indeed, the court notes that Wyoming waited a full fourteen years after entering the first PMM-based contract before bringing suit. To be sure, during this period of time Wyoming never complained about the contract or loss of profit. Nor is there an iota of evidence in the record that Wyoming was being taken advantage of by the government. It is almost universally conceded that "'wherever a contract not already fully performed is continued in spite of a known breach, the wronged party cannot avail himself of that excuse .... As a general proposition, one side cannot continue after a material breach by the other..., act as if the contract remains fully in force (although stopping performance would be fair and convenient), run up damages, and then go suddenly to court.'" *Ling-Temco-Vought, Inc.,* 475 F.2d at 637 (quoting *Northern Helix Co. v. United States,* 197 Ct. Cl. 118, 125-26, 455 F.2d 546, 551 (1972)).[11]

The court declines to follow the rationale and result of *Tesoro Hawaii Corp. v. United States*, 2003 WL 22416288 (Fed. Cl., Sept. 15, 2003). The court, in the latest of the *MAPCO*-type cases to be decided by the Court of Federal Claims, refused to find a waiver. The court, in part citing *LaBarge Prods., Inc. v. West,* 46 F.3d 1547, 1552 (Fed. Cir.1995), opined that because the EPA clause was unlawful, yet was promulgated to protect both the contractor and the government, the contractor had no duty to timely protest. *Tesoro,* 2003 WL 22416288 at *7. This court in *Hermes I*, however, previously distinguished *LaBarge*. *See Hermes I,* 2003 WL 22416284 at *12(construing the varying results of the several cited Federal Circuit opinions as the product of the balancing of differing degrees of bad behavior, while noting that the behavior of plaintiff Wyoming in the case at bar was far more egregious than that of LaBarge's and that universally applying the rationale in cases such as *LaBarge* would give recalcitrant contractors the equivalent of "007's license to kill.")

In explaining the reasoning behind the *LaBarge* holding, *Tesoro* characterized the FAR

---

[10] Or at least seven. Wyoming did submit a certified claim that it was not receiving fair market price on April 24, 2001. App. to Def.'s Mot. for Partial Summ. J. at 5 (ex. 1).

[11] Although not necessary to the court's legal conclusion that Wyoming waived its claim, the court notes that there is clear indication in the record that Wyoming might very well have had actual, as well as, constructive notice of the *MAPCO* decision itself. For instance, it strains credulity to believe that David R. Miller, Wyoming's Vice President of Accounting and Administration, did not have advise of counsel when he spearheaded Wyoming's efforts in entering into multiple contracts worth millions of dollars. If Mr. Miller did not know of *MAPCO,* he should have. *See Trilon Educational Corp. v. United States*, 578 F.2d 1356, 1359 (Ct. Cl. 1978)(a contracting officers failure to "unearth the facts needed to assess the contractor's responsibility" prevents them from later trying to rescind the contract after performance had begun.). And, the government asserts that it "has reason to believe that Wyoming may have received a letter from its current counsel not long after the *MAPCO* decision issued expressly outlining its rights according to *MAPCO.*" Def.'s Supplemental Br. at 2 (app. 1).

provision at issue, the EPA-PMM clause, as raising "institutional concerns," and thus not subject to the doctrine of waiver because the "parties to fuel contracts such as those at issue here would be free to rewrite federal procurement policy through negligence or collusion." *Tesoro,* 2003 WL 22416288 at *7. With all due respect, these concerns are misplaced.

The crux of these "institutional concerns" arise from the time-tested tenet that equitable principles, such as estoppel and waiver, cannot override jurisdiction, illegalities, and public policy. *See Commodity Futures Trading Com. v. Schor,* 478 U.S. 833, 850-51 (1986)("structural principles" such as Article III jurisdiction are not waivable); *see also Kaiser Steel Corp. v. Mullins,* 455 U.S. 72, 82 (1982)("If a promisee need only wait until a contract expires to enforce an illegal provision, the defense of illegality would obviously be ephemeral.... And if it be suggested that Kaiser should not have waited so long to assert its defense, the Court has held that 'rules of estoppel will not be permitted to thwart the purposes of statutes of the United States.'")(quoting *Sola Elec. Co. v. Jefferson Elec. Co.*, 317 U .S. 173, 176 (1942)).

The FAR at issue here presents no such genuine concerns. While characterized as "illegal" or "unlawful,"*see Tesoro Hawaii Corp.,* 2003 WL 22416288 at 3; *Calcasieu Ref. Co.,* 2003 WL 22049528 at 6; *Hermes I,* 2003 WL 22416284 at *2, the EPA-PMM clause is better termed as "unauthorized, " *see Barrett Ref. Corp.,* 242 F.3d at 1060; *Gold Line II,* 54 Fed. Cl. at 297. Its erroneous construction by the DESC does not rise to the level of flouting jurisdiction, *Schor,* 478 U.S. at 850-51 (Article III jurisdiction) or being contrary to the statutes of the United States or public policy, *Kaiser Steel Corp.*, 455 U.S. at 82 (anti-trust and labor law).

Indeed, the EPA clause was promulgated for the mutual benefit of both the government and the contractor. *See La Gloria*, 56 Fed. Cl. at 214; *Calcasieu*, slip op. at 14. As such, it is subject to mutual or class alteration through the deviation process, "unless precluded by law, executive order or regulation." 48 C.F.R. § 1.402 (2002)("Policy"); *see* 48 C.F.R. § 1.403 (2002)("Individual deviations")(agency heads or their designees may authorize individual deviations which affect only one contracting action); 48 C.F.R. § 1.404 (2002)("Class deviations")(authorizing class deviations which affect more than one contracting action). It is, thus, neither *malum in se* nor directly *malum prohibitum*. Accordingly, there is no cogent reason not to apply the doctrine of waiver to the case at bar.

Wyoming's final attempt to avoid an unfavorable finding that it has waived its right to bring suit rests on the doctrine of "unclean hands." The court finds Wyoming's "unclean hands" argument based on DESC's knowledge of *MAPCO* and subsequent awarding of two contracts to Wyoming without seeking a FAR deviation, unpersuasive. Pl.'s Supplemental Br. at 8. Contrary to Wyoming's assertion that defendant disregarded the court's decision in *MAPCO*, the record clearly indicates that while the defendant disagreed with the court decision, the defendant sought a change in the FAR "to develop and use [EPA] clauses that are based on ... established prices[,] to encompass industry-wide and geographically based market price references ...." App. to Def.'s Mot. for Partial Summ. J. at 1 (ex.19).

Defendant initially requested several individual deviations, until such time as a permanent rule change could be obtained. Def.'s Mot. for Partial Summ. J. at 7. In October 1995, the Director of Defense Procurement ("DDP"), approved DESC's request for a class deviation from the requirements of FAR 16.203-1 and 16.203-4(a) when using [EPA's] in fixed-price contracts. *Id.* at 1 (ex. 19). And,

on August 2, 1999, a confirmatory amendment to the DLA's FAR supplement was published in the Federal Register. App. to Def.'s Mot. for Partial Summ. J. at 1 (ex. 14). The defendant's conduct indicates good faith in their attempt to abide by the court's decision in *MAPCO* while seeking conforming changes to the FAR.

## III. Conclusion

For the foregoing reasons, defendant's motion for partial summary judgment is hereby **GRANTED**. Correspondingly, plaintiff's cross-motion for partial summary judgement is **DENIED**.

Given the substantial difference of opinion in the Court of Federal Claims concerning both the legality of the authorization of the EPA-PMM clauses and the appropriateness of the doctrine of waiver (*compare Tesoro Hawaii Corporation v. United States*, 2003 WL 22416288 (Fed. Cl., September 15, 2003), with *Williams Alaska Petroleum, Inc v. United States*, 2003 U.S. Claims LEXIS 267 (Fed. Cl. Oct. 1, 2003), and this court's opinion *sub judice* and in *Hermes Consol., Inc. v. United States*, 2003 WL 22416284 (Fed. Cl., Aug. 7, 2003)) leave is granted for either party to appeal this decision for interlocutory review pursuant to 28 U.S.C. § 1292(d)(2).

Approximately 22 other similarly-situated cases are currently pending in this court, and this confusion as to the state of the law is likely to become worse if the issues here are not soon resolved. Promptly resolving the issues raised above would materially advance the ultimate termination of the litigation here and in other similarly situated cases.

For the reasons stated above, this court certifies the following questions for interlocutory appeal under 28 U.S.C. § 1292(d)(2):

(1) Was DESC 's promulgation of the economic price adjustment clauses indexed to the PMM unauthorized?

(2) May defendant assert the defense of waiver to bar Wyoming from pursuing a remedy for DESC's unauthorized fuel prices?

Pursuant to 28 U.S.C. § 1292(d)(2), the parties have 10 days after the entry of this order to submit a petition for permission to appeal with the Circuit Clerk of the United States Court of Appeals for the Federal Circuit.

The parties are referred to Federal Rule of Appellate Procedure 5 for the specific guidelines concerning the required content of such a petition.

**IT IS SO ORDERED.**

Lawrence J. Block

Judge