IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| HERMES CONSOLIDATED, INC.,<br>Doing Business As Wyoming Refining<br>Company,<br><br>Plaintiff,<br>vs.<br><br>THE UNITED STATES,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 02-1460C<br>(Judge Block) |

**AMENDED COMPLAINT**

For its Amended Complaint, Plaintiff Hermes Consolidated, Inc., doing business as Wyoming Refining Company, alleges as follows:

**INTRODUCTION**

1. Plaintiff entered a series of contracts with the United States government for the purchase of fuel.

2. The contracts contained a price adjustment clause that typically permitted the government to change the price it paid for fuel by as much as 60 percent of the contract price.

3. In *Barrett Refining Corp. v. United States*, 242 F.3d 1055 (Fed. Cir. 2001), the United States Court of Appeals for the Federal Circuit held that the government's price adjustment clause was illegal.

4. The government profited from its illegal price adjustment clause by materially underpaying Plaintiff and then denied Plaintiff's claims for relief.

5. Plaintiff seeks here to be made whole for the government's violation of the law.

**THE PARTIES**

6. Plaintiff Hermes Consolidated, Inc., doing business as Wyoming Refining Company ("Wyoming Refining"), is a Delaware corporation with its principal place of business in Denver, Colorado.

7. Defendant is the United States acting, *inter alia*, through the Defense Energy Support Center ("DESC"). DESC is part of the Defense Logistics Agency, which is part of the Department of Defense. During the period at issue, DESC previously was known as the Defense Fuel Supply Center; however, Defendant is referred to as "DESC" throughout.

**JURISDICTION**

8. This Court has jurisdiction to entertain this action pursuant to 28 U.S.C. § 1491 (2002), 41 U.S.C. §§ 601-613 (2002), and U.S. Const. amend. V.

**STATEMENT OF THE CASE**

**I. THE CONTRACTS**

9. From at least 1980 to 1999, DESC was the largest purchaser of fuel in the United States and the sole purchaser and user of military grade fuels. During this period, DESC purchased over $90 billion of military fuel. By virtue of DESC's market position, DESC had substantial market power and substantial ability to affect the prices it paid for military fuels.

10. From 1986 to 1997, Wyoming Refining and DESC entered a series of long-term contracts for the purchase of approximately $223 million of military fuel. The contracts provided for the purchase of different types of military fuel at different locations in the United States.

11. Wyoming Refining's contracts contained DESC's standard price adjustment clause. DESC's price adjustment clause typically permitted DESC to change the monthly price it paid Wyoming Refining for fuel by as much as 60 percent of the contract price.

12. DESC has acknowledged at least two authorized purposes for its price adjustment clause: First, to protect DESC and Wyoming Refining against market fluctuations, and, second, to ensure that the prices DESC paid Wyoming Refining for military fuels under the long-term contracts reflected at least fair market value.

13. DESC's price adjustment clause permitted DESC to adjust the prices it paid Wyoming Refining for fuel based on changes in price indexes published by the Department of Energy in the *Petroleum Marketing Monthly* (hereafter the "PMM Indexes").

14. Contrary to the acknowledged purposes of DESC's price adjustment clause, the Department of Energy did not design or intend for the PMM Indexes to be used to set or adjust prices in response to market fluctuations, and the PMM Indexes did not reflect the fair market value for the military fuels DESC purchased.

15. DESC used the PMM Indexes in its price adjustment clause in contravention of the acknowledged purposes of the clause, and despite knowing that the PMM Indexes were not designed to set or adjust prices in response to market fluctuations, and despite knowing that the PMM Indexes did not reflect fair market value.

16. As a result of DESC's use of the PMM Indexes in its price adjustment clause, DESC paid Wyoming Refining prices for fuel that were materially below fair market value.

## II. DESC'S ILLEGAL PRICE ADJUSTMENT CLAUSE

17. DESC's price adjustment clause was illegal.

18. In *Barrett Refining Corp. v. United States*, 242 F.3d 1055 (Fed. Cir. 2001), the Federal Circuit held that the same price adjustment clause DESC used in Wyoming Refining's contracts violated law and regulation because it did not base price adjustments on a supplier's own established prices or costs. Instead, DESC illegally based price adjustments on the PMM Indexes, which resulted in prices that were materially below fair market value.

19. DESC violated the law in other respects in awarding and administering Wyoming Refining's contracts. DESC violated the Office of Federal Procurement Policy Act and its implementing regulations by using illegal auction techniques, at least after July 16, 1989. DESC awarded Wyoming Refining's contracts in violation of DOD Federal Acquisition Regulation ("DFAR") pt. 219, by improperly soliciting and awarding portions of the procurements set aside for small and small disadvantaged businesses. DESC violated the equal protection component of the Fifth Amendment's due process clause by extending to minority-owned businesses bidding preferences that were not narrowly tailored to further a compelling government interest.

20. DESC violated the law knowingly.

21. DESC thus combined its substantial market power and substantial ability to affect the price of military fuel with a knowing violation of law and regulation to reduce below fair market value the price it paid for fuel.

22. DESC profited from violating the law by paying Wyoming Refining materially less than fair market value for the fuel DESC purchased.

## III. <u>WYOMING REFINING'S CERTIFIED CLAIMS</u>

23. Pursuant to the Contract Disputes Act, Wyoming Refining submitted certified claims to DESC's contracting officer seeking relief from DESC's use of the PMM Indexes and violation of law and regulation in awarding and administering Wyoming Refining's contracts.

24. On April 24, 2001, Wyoming Refining submitted certified claims under the following contracts:

| | |
|---|---|
| DLA600-86-D-0877 | DLA600-91-D-0578 |
| DLA600-87-D-0589 | DLA600-92-D-0549 |
| DLA600-88-D-0577 | DLA600-93-D-0560 |
| DLA600-89-D-0568 | DLA600-94-D-0529 |
| DLA600-90-D-0552 | |

25. On September 2, 2003, Wyoming Refining submitted an additional certified claim under Contract No. SPO600-97-D-0510.

## IV. <u>DESC'S FINAL DECISIONS</u>

26. On December 6, 2001, DESC's contracting officer issued a final decision denying the claims Wyoming Refining submitted on April 24, 2001.

27. On November 3, 2003, DESC's contracting officer issued a final decision denying the additional claim Wyoming Refining submitted on September 2, 2003.

28. Despite having determined the price of fuel illegally, DESC asserted in its final decision that it had paid Wyoming Refining *exactly* fair market value for the fuel Wyoming Refining supplied under the long-term contracts.

29. DESC denied that Wyoming Refining was entitled to any recovery and denied all of Wyoming Refining's claims. DESC alternatively asserted that it was entitled to "re-price" Wyoming Refining's contracts and to recover $7,048,924.00 from Wyoming Refining.

30. Pursuant to the Contract Disputes Act, Wyoming Refining hereby timely files suit upon and appeals the entirety of DESC's December 6, 2001 and November 3, 2003 final decisions.

**COUNT I**
**(Illegality)**

31. Wyoming Refining realleges and incorporates by reference the allegations set forth in paragraphs 1 through 30, above.

32. DESC knowingly awarded and administered each of Wyoming Refining's contracts in violation of law and regulation, *inter alia*, by basing price adjustments on the PMM Indexes that were not designed or intended to be used to set or adjust prices and which resulted in prices that were materially below fair market value.

33. DESC knowingly awarded and administered each of Wyoming Refining's contracts in violation of law and regulation, *inter alia*, by violating the Office of Federal Procurement Policy Act and its implementing regulations, DFAR pt. 219, and the equal protection component of the Fifth Amendment's due process clause.

34. DESC's violation of law and regulation in awarding and administering Wyoming Refining's contracts damaged Wyoming Refining.

35. Wyoming Refining is entitled to recover based on the fair market value of the fuel it delivered to DESC in an amount of at least $34,590,197.12 plus interest, by way of reformation, *quantum valebant*, or rescission and restitution.

**COUNT II**
**(Misrepresentation)**

36. Wyoming Refining realleges and incorporates by reference the allegations set forth in paragraphs 1 through 35, above.

37. DESC knowingly awarded and administered Wyoming Refining's contracts in violation of law and regulation.

38. DESC knowingly based price adjustments on the PMM Indexes that were not designed or intended to be used to set or adjust prices and which resulted in prices that were materially below fair market value.

39. In awarding and administering the contracts, DESC, through the contracting officer and others, misrepresented and otherwise failed to disclose its violation of law and regulation.

40. In awarding and administering the contracts, DESC, through the contracting officer and others, misrepresented and otherwise failed to disclose that the PMM Indexes were not designed or intended to be used to set or adjust prices.

41. Wyoming Refining reasonably relied upon DESC's material and/or fraudulent misrepresentations as an inducement to enter the contracts.

42. DESC's material and/or fraudulent misrepresentations damaged Wyoming Refining.

43. Wyoming Refining is entitled to recover based on the fair market value of the fuel it delivered to DESC in an amount of at least $34,590,197.12 plus interest, by way of rescission and restitution, damages, or reformation.

**COUNT III**
**(Breach of Contract)**

44. Wyoming Refining realleges and incorporates by reference the allegations set forth in paragraphs 1 through 43, above.

45. DESC's compliance with law and regulation in awarding and administering the contracts was a material condition of the contracts upon which Wyoming Refining reasonably relied in entering the contracts.

46. DESC's basing price adjustments on standards that were designed or intended to be used to set or adjust prices was a material condition of the contracts upon which Wyoming Refining reasonably relied in entering the contracts.

47. In contravention of DESC's contractual obligations, DESC violated law and regulation in awarding and administering the contracts.

48. In contravention of DESC's contractual obligations, DESC based price adjustments on standards such as the PMM Indexes that were not designed or intended to be used to set or adjust prices and which resulted in prices that were materially below fair market value.

49. DESC's violation of law and regulation in awarding and administering the contracts constituted breach of contract.

50. DESC's use of the PMM Indexes to set or adjust prices under the contracts constituted breach of contract.

51. DESC's breach of contract damaged Wyoming Refining.

52. Wyoming Refining is entitled to recover based on the fair market value of the fuel it delivered to DESC in an amount of at least $34,590,197.12 plus interest, by way of rescission and restitution, or damages.

**COUNT IV**
**(Implied-In-Fact Contract)**

53. Wyoming Refining realleges and incorporates by reference the allegations set forth in paragraphs 1 through 52, above.

54. DESC knowingly awarded and administered each of Wyoming Refining's contracts in violation of law and regulation.

55. DESC's violation of law and regulation in awarding and administering Wyoming Refining's contracts rendered at least the price terms of Wyoming Refining's contracts invalid and unenforceable.

56. DESC's violation of law and regulation in awarding and administering Wyoming Refining's contracts damaged Wyoming Refining.

57. At least the pricing terms of Wyoming Refining's contracts are replaced by an implied-in-fact contract to pay the fair market value of the fuel Wyoming Refining delivered to DESC.

58. Wyoming Refining is entitled to recover based on the fair market value of the fuel it delivered to DESC in an amount of at least $34,590,197.12 plus interest, by way of an implied-in-fact contract and/or *quantum valebant*.

**COUNT V**
**(Failure of Consideration And Frustration of Purpose)**

59. Wyoming Refining realleges and incorporates by reference the allegations set forth in paragraphs 1 through 58, above.

60. DESC's compliance with law and regulation in awarding and administering the contracts was a material part of the consideration upon which Wyoming Refining reasonably relied in entering the contracts and a material purpose of the contracts.

61. DESC's basing price adjustments on standards that were designed or intended to be used to set or adjust prices was a material part of the consideration upon which Wyoming Refining reasonably relied in entering the contracts and a material purpose of the contracts.

62. DESC violated law and regulation in awarding and administering the contracts.

63. DESC based price adjustments on the PMM Indexes that were not designed or intended to be used to set or adjust prices and which resulted in prices that were materially below fair market value.

64. DESC's violation of law and regulation in awarding and administering the contracts constituted a failure of consideration and frustrated the purpose of the contracts.

65. DESC's use of the PMM Indexes that were not designed or intended to be used to set or adjust prices constituted a failure of consideration and frustrated the purpose of the contracts.

66. This failure of consideration and frustration of the purpose of the contracts damaged Wyoming Refining.

67. Wyoming Refining is entitled to recover based on the fair market value of the fuel it delivered to DESC in an amount of at least $34,590,197.12 plus interest, by way of rescission and restitution.

**COUNT VI**
**(Mistake)**

68. Wyoming Refining realleges and incorporates by reference the allegations set forth in paragraphs 1 through 67, above.

69. Wyoming Refining entered and performed the contracts with the intent that they comply with law and regulation. This was a material condition upon which Wyoming Refining reasonably relied in entering the contracts.

70. Wyoming Refining entered and performed the contracts with the intent that the standards used to make price adjustments were designed or intended to be used to set or adjust prices. This was a material condition upon which Wyoming Refining reasonably relied in entering the contracts.

71. DESC did not comply with law and regulation in awarding and administering the contracts.

72. DESC based price adjustments on the PMM Indexes that were not designed or intended to be used to set or adjust prices and which resulted in prices that were materially below fair market value.

73. If DESC did not knowingly award and administer contracts in violation of law and regulation, as alleged above, then DESC must be presumed to have intended to award and administer contracts in accordance with law and regulation.

74. If DESC did not know that the PMM Indexes were not designed or intended to be used to set or adjust prices, as alleged above, then DESC must be presumed to have used the PMM Indexes with the intent that they were designed or intended to be used to set or adjust prices.

75. As the result of a mistake relating to DESC's compliance with law and regulation, DESC and Wyoming Refining entered and performed contracts in violation of law and regulation.

76. As a result of a mistake, DESC and Wyoming Refining entered and performed contracts using the PMM Indexes to set or adjust prices.

77. If DESC and Wyoming Refining had not been mistaken, DESC and Wyoming Refining would not have entered and performed contracts in violation of law and regulation.

78. If DESC and Wyoming Refining had not been mistaken, DESC and Wyoming Refining would not have entered and performed contracts using the PMM Indexes to set or adjust prices.

79. Alternatively, if DESC was not mistaken in awarding and administering contracts in violation of law and regulation, then DESC knew or should have known of Wyoming Refining's mistake and failed to meet its duty timely to disclose this mistake to Wyoming Refining.

80. If DESC was not mistaken in awarding and performing contracts using the PMM Indexes to set or adjust prices, then DESC knew or should have known of Wyoming Refining's mistake and failed to meet its duty timely to disclose this mistake to Wyoming Refining.

81. The parties' mutual mistake and/or DESC's failure to disclose Wyoming Refining's unilateral mistake damaged Wyoming Refining.

82. Wyoming Refining is entitled to recover based on the fair market value of the fuel it delivered to DESC in an amount of at least $34,590,197.12 plus interest, by way of reformation, or rescission and restitution.

**COUNT VII**
**(Taking)**

83. Wyoming Refining realleges and incorporates by reference the allegations set forth in paragraphs 1 through 82, above.

84. Wyoming Refining has property rights in and in relation to the fuel it delivered to DESC. In addition, Wyoming Refining has property rights in relation to DESC's procurement of the fuel Wyoming Refining delivered.

85. With no fully supporting claim of right, DESC took possession of and infringed upon Wyoming Refining's property rights in and in relation to the fuel it delivered.

86. DESC's taking of Wyoming Refining's property was for a public purpose.

87. To the extent that DESC's taking of Wyoming Refining's property was effected in conjunction with a violation of law and regulation, DESC acted within the general scope of its authority to procure the fuel.

88. DESC effected a taking of Wyoming Refining's property within the meaning of the Fifth Amendment of the United States Constitution.

89. DESC has not paid Wyoming Refining just compensation for the taking of Wyoming Refining's property.

90. DESC's failure to pay Wyoming Refining just compensation for the taking of its property violated the Fifth Amendment of the United States Constitution and thereby damaged Wyoming Refining.

91. Wyoming Refining is entitled to recover just compensation in an amount of at least $34,590,197.12 plus interest from the time of the taking.

## PRAYER FOR RELIEF

WHEREFORE, Wyoming Refining requests judgment as follows:

1. $34,590,197.12 plus interest, or such further amount as established prior to judgment;

2. Denial of DESC's re-pricing claim; and

3. Such other and further relief, including attorney fees, as the Court may deem just and equitable.

Respectfully submitted,

s/ J. Keith Burt
J. Keith Burt
Mayer, Brown, Rowe & Maw LLP
1909 K Street, N.W.
Washington, D.C. 20006
(202) 263-3208 (phone)
(202) 263-5308 (fax)

Attorneys for Plaintiff
Hermes Consolidated, Inc.
Doing Business As
Wyoming Refining Company

*Of Counsel:*

Adrian L. Steel, Jr.
Mayer, Brown, Rowe & Maw LLP
1909 K Street, N.W.
Washington, DC 20006

October 27, 2004