# United States Court of Appeals for the Federal Circuit

04-5064

TESORO HAWAII CORPORATION, TESORO ALASKA COMPANY
and HERMES CONSOLIDATED, INC.,
d/b/a Wyoming Refining Company,

Plaintiffs-Appellants,

v.

UNITED STATES,

Defendant-Appellee.

## *Judgment*

ON APPEAL from the UNITED STATES COURT OF FEDERAL CLAIMS

in CASE NO(S): 02-CV-1460

This CAUSE having been heard and considered, it is

ORDERED and ADJUDGED:

**REVERSED**.

CERTIFIED COPY
I HEREBY CERTIFY THIS DOCUMENT IS A TRUE AND CORRECT COPY OF THE ORIGINAL ON FILE.
UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT
By: Date: Aug 29, 2005

*ENTERED BY ORDER OF THE COURT*

*DATED* APR 2 6 2005

Jan Horbaly

*Jan Horbaly, Clerk*

**ISSUED AS A MANDATE:** AUG 2 9 2005

# United States Court of Appeals for the Federal Circuit

04-5064

TESORO HAWAII CORPORATION, TESORO ALASKA COMPANY and HERMES CONSOLIDATED, INC., d/b/a Wyoming Refining Company,

Plaintiffs-Appellants,

v.

UNITED STATES,

Defendant-Appellee.

J. Keith Burt, Mayer, Brown, Rowe & Maw, LLP, of Washington, DC, argued for plaintiffs-appellants. With him on the brief were Michael E. Lackey, Jr., Gary A. Winters, and Monica A. Aquino.

Steven J. Gillingham, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee. With him on the brief were Peter D. Keisler, Assistant Attorney General; David M. Cohen, Director; and Kyle Chadwick, Trial Attorney. Of counsel on the brief were Bernard A. Duval, Counsel; and Howard M. Kaufer and Donald S. Tracy, Assistant Counsel, Office of Counsel, Defense Energy Support Center, of Ft. Belvoir, Virginia.

Ralph C. Nash, Jr., of Washington, DC, for amicus curiae Chamber of Commerce of the United States. Of counsel on the brief was Robin S. Conrad, National Chamber Litigation Center, Inc., of Washington, DC.

Carolyn F. Corwin, Covington & Burling, of Washington, DC, for amicus curiae American Petroleum Institute. With her on the brief were Robert A. Long, Jr. and James R. Dean, Jr. Of counsel on the brief was Douglas W. Morris, American Petroleum Institute, of Washington, DC.

Roy T. Englert, Jr., Robbins, Russell, Englert, Orseck & Untereiner LLP, of Washington, DC, for amicus curiae National Petrochemical & Refiners Association. With him on the brief were Donald J. Russell and Max Huffman. Of counsel on the brief was Robert G. Slaughter, National Petrochemical & Refiners Association, of Washington, DC.

Appealed from: United States Court of Federal Claims

Senior Judge Eric G. Bruggink
Judge Lawrence J. Block

# United States Court of Appeals for the Federal Circuit

04-5064

TESORO HAWAII CORPORATION, TESORO ALASKA COMPANY
and HERMES CONSOLIDATED, INC.,
d/b/a Wyoming Refining Company,

Plaintiffs-Appellants,

v.

UNITED STATES,

Defendant-Appellee.

---

DECIDED: April 26, 2005

---

Before RADER, BRYSON, and GAJARSA, Circuit Judges.

GAJARSA, Circuit Judge.

Tesoro Hawaii Corporation and Tesoro Alaska Company (collectively "Tesoro") and Hermes Consolidated, Inc. ("Hermes") jointly petitioned this court for permission to appeal certified orders of the United States Court of Federal Claims in the separate proceedings, Tesoro Hawaii Corp. v. United States, 58 Fed. Cl. 65 (2003), and Hermes Consol., Inc. v. United States, No. 02-1460 C, 2003 U.S. Claims LEXIS 312 (Nov. 3, 2003). We granted Tesoro and Hermes permission to pursue interlocutory appeal of issues relating to the legality of contract price determinations made by the Defense Energy Support Center ("DESC"). Tesoro Hawaii Corp. v. United States, 89 Fed. Appx. 732 (Fed. Cir. 2004). Because DESC's price setting mechanism was consistent with

the applicable regulations, we reverse the decisions of the trial court holding that DESC's practice was illegal.

## I. BACKGROUND

DESC is the principal purchaser of military fuel for the United States Department of Defense. Between 1983 and 1999, Tesoro entered into thirty-six contracts with DESC to supply the government with military jet fuel. Hermes entered into nine comparable contracts with DESC between 1988 and 1994.

Each of the DESC military fuel contracts contained a clause that adjusted on a monthly basis the prices paid for the fuel supplied. The Economic Price Adjustment ("EPA") clause provided that "[t]he prices payable under this contract for listed items shall be the base [bid] price for the listed item increased or decreased by the same number of cents, or fraction thereof, that the reference price increases or decreases per like unit of measure from the base reference price." The reference prices to which the price adjustments were tied were drawn from market publications. Until June 23, 1994, DESC drew its EPA reference prices from the market publication known as the Petroleum Marketing Monthly ("PMM").

The PMM, which is published by the Department of Energy ("DOE"), is a report compiling the monthly average sales figures for specified fuels for five regions known as Petroleum Administration for Defense Districts ("PADDs"). All refiners, including Tesoro and Hermes, are required by law to submit monthly sales data to the DOE, which then compiles the data to report the monthly average sales prices per PADD for various products. The compilation and computation process takes approximately three months, which means that the PMM report for April's sales figures is typically published in mid-

July. In order to accommodate this lag time, the DESC contracts tied to the PMM provided for an interim reference price tabulation subject to final adjustment upon publication of the appropriate PMM.

In 1992, the Court of Federal Claims issued a decision holding that DESC's use of a PMM-based EPA clause was not authorized by the Federal Acquisition Regulations ("FAR"). MAPCO Ala. Petroleum, Inc. v. United States, 27 Fed. Cl. 405 (Fed. Cl. 1992). Following the MAPCO decision, DESC received permission to deviate from the FAR's provisions by obtaining individual and class deviations authorizing it to continue using EPA clauses identical or similar to the one struck down in MAPCO. According to the regulations applicable at the time, an individual deviation affects only one "contracting action," 48 C.F.R. § 1.403 (1995), whereas a class deviation affects "more than one contracting action," Id. § 1.404. Two of Tesoro's contracts were awarded pursuant to individual deviations and three were awarded pursuant to class deviations.

Tesoro and Hermes filed suit in the Court of Federal Claims alleging that DESC breached their fuel supply contracts by using unlawful EPA clauses that resulted in their receipt of under-payments for the fuel provided. The complaints in both suits included among their claims the charge that DESC's actions were per se illegal because the PMM-based EPA clause was inconsistent with the applicable section of the FAR, Id. § 16.203. Tesoro also alleged that the deviations obtained by DESC were procedurally deficient and therefore ineffective to permit the use of such clauses. The parties in both suits filed cross motions for summary judgment on the claim of per se illegality. In its motions, the government asserted that DESC's use of the EPA clause was legally authorized and raised the equitable defense of waiver.

In Tesoro, the court resolved all issues in favor of the plaintiff holding that DESC's initial use of its EPA clause was not authorized by the FAR; DESC's efforts to obtain individual and class deviations were legally deficient and waiver could not apply to Tesoro's claims as a matter of law. 58 Fed. Cl. at 69-75. In conjunction with its grant of partial summary judgment, the court certified three questions for interlocutory appeal:

> (1) Did DESC establish the price of fuel in violation of law by employing economic price adjustment clauses indexed to PMM?
> (2) Were DESC's individual or class deviations obtained in violation of law?
> (3) Can DESC assert the defense of waiver to bar Tesoro from pursuing a remedy for DESC's illegal fuel prices?

Tesoro Hawaii Corp. v. United States, No. O2-704C (Fed. Cl. Oct. 30, 2003) (order certifying questions for interlocutory appeal).

In Hermes, the trial court also found that DESC's PMM-based EPA clause was not authorized by the FAR, Hermes Consol., Inc. v. United States, 58 Fed. Cl. 3, 9-12 (2003), but determined that Hermes had waived its right to recover by completing performance of the contracts with presumed knowledge of the illegality of their terms, 2003 U.S. Claims LEXIS 312, at *27-28. In conjunction with its grant of partial summary judgment, the trial court in Hermes certified two questions for resolution on interlocutory appeal: "(1) Was DESC's promulgation of the economic price adjustment clauses indexed to the PMM unauthorized?" and "(2) May defendant assert the defense of waiver to bar [Hermes] from pursuing a remedy for DESC's unauthorized fuel prices?" Hermes, 2003 U.S. Claims LEXIS 312, at *35. Because both sets of certified questions involve "controlling questions of law as to which there is substantial ground for difference of opinion and for which an immediate appeal may materially advance the ultimate termination of the litigation," this court granted Tesoro and Hermes (collectively

"Appellants") permission to file their interlocutory appeal.[1] Tesoro Hawaii Corp. v. United States, 89 Fed. Appx. 732, 732 (Fed. Cir. 2004) (citing 28 U.S.C. § 1292(d)). We have jurisdiction pursuant to 28 U.S.C. § 1292(c)(1).

## II. DISCUSSION

This court reviews de novo the grant of a partial summary judgment by the Court of Federal Claims. Allegheny Teledyne v. United States, 316 F.3d 1366, 1373 (Fed. Cir. 2003). Likewise, we review certified questions of law without deference to the decisions of the Court of Federal Claims. Vereda, Ltda. v. United States, 271 F.3d 1367, 1374 (Fed. Cir. 2001).

### A. Governing Regulations

Specific guidelines governing the use by federal agencies of fixed-price contracts with economic price adjustments appear in § 16.203 of the FAR. 48 C.F.R. § 16.203 (1994).[2] FAR § 16.203-1 describes such contracts as providing "for upward and downward revision of the stated contract price upon the occurrence of specified contingencies." 48 C.F.R. § 16.203-1 (1994). The regulation authorizes the use of three types of EPAs:

> (a) Adjustments based on established prices. These price adjustments are based on increases or decreases from an agreed-upon level in published or otherwise established prices of specific items or the contract end items.

---

[1] Resolution of the issues presented in the certified questions may also impact the twenty-two other cases filed by plaintiffs similarly situated to Tesoro and Hermes that are currently pending before the Court of Federal Claims. Hermes, 2003 U.S. Claims LEXIS 312, at *34.

[2] The guidelines governing use of fixed-price contracts with EPAs appear at § 16.203 of the current FAR, but provisions not relevant to this case have been added to those regulations with concomitant renumbering of the relevant portions. For ease of reference, we refer to the codifications in effect at the time the contracts were entered into.

> (b) Adjustments based on actual costs of labor or material. These price adjustments are based on increases or decreases in specified costs of labor or material that the contractor actually experiences during contract performance.
>
> (c) Adjustments based on cost indexes of labor or material. These price adjustments are based on increases or decreases in labor or material cost standards or indexes that are specifically identified in the contract.

Id. The government asserts that the DESC's EPA clause is properly considered an adjustment based on established prices as contemplated by section (a) of the regulation.

Use of the clauses described in FAR § 16.203-1 is limited by FAR § 16.203-3, which provides that:

> A fixed-price contract with economic price adjustment shall not be used unless the contracting officer determines that it is necessary either to protect the contractor and the Government against significant fluctuations in labor or material costs or to provide for contract price adjustment in the event of changes in the contractor's established prices.

48 C.F.R. § 16.203-3 (1994). The interplay of § 16.203-1 and § 16.203-3 forms the basis for Appellants' argument that the EPA clause used by the DESC is not authorized by the FAR.

B. Parties' Arguments

Appellants assert that the term "established prices" in FAR § 16.203-1 should be read as "contractor's established prices" in order to be consistent with the term found in FAR § 16.203-3. Under this reading of the two sections, prices could only be adjusted based on changes in the individual contractor's prices and not based on changes in overall market prices. Appellants justify reading the regulations in this manner by pointing to changes made in the regulatory scheme when the FAR was adopted in 1984.

Prior to 1984, the Defense Acquisition Regulation ("DAR") governed Department of Defense procurements. The text of both FAR § 16.203-1 and FAR § 16.203-3 appeared in the DAR, but with the limitations of FAR § 16.203-3 preceding the descriptive provisions of FAR § 16.203-1. Although the order of the DAR provisions was changed when they were converted into the FAR, no substantive change in the meaning of the provisions was intended. See 46 Fed. Reg. 42,303 (1981). Appellants argue that based on the order in which the limitations and description sections appeared in the DAR, the use of the term "contractor's established prices" in the limitation section means that the word "contractor's" should be implied before the term "established prices" in the description section. Believing it appropriate to imply the term "contractor's established prices" into the description section of the DAR, Appellants argue that the implication must be carried over to FAR § 16.203-1 in order to maintain the original substance of the regulations.

The government asserts that Appellants' argument is inconsistent with the plain meaning of the regulatory language. First, it challenges Appellants' attempt to insert the word "contractor's" into sections of the regulations where it does not otherwise appear as contrary to the presumption that the drafters' selective use of the phrases "established price" and "contractor's established price" indicated that when "established price" was used the word "contractor's" was intentionally omitted. Ad Hoc Comm. of AZ-NM-TX-FL Producers of Gray Portland Cement v. United States, 13 F.3d 398, 401 (Fed. Cir. 1994) (stating that it is well established that where specific language is included in one section of a statute but omitted from another, related section of the same Act, it is generally presumed that the omission was intentional). The government

also points to other sections of FAR § 16.203 that are inconsistent with Appellants' reading of § 16.203-1.

As an indication that the term "established prices" in FAR § 16.203-1 includes market prices, the government first focuses on FAR § 16.203-4. FAR § 16.203-4 specifies the conditions under which each type of EPA clause outlined by FAR § 16.203-1 may be used. 48 C.F.R. § 16.203-4 (1994). The four types of EPA clauses addressed are: (1) "Adjustment based on established prices – standard supplies" (FAR § 16.203-4(a)); (2) "Adjustment based on established prices – semistandard supplies" (FAR § 16.203-4(b)); (3) "Adjustments based on actual cost of labor or material" (FAR § 16.203-4(c)); and (4) "Adjustments based on cost indexes of labor or material" (FAR § 16.203-4(d)). As the government notes, the headings used in FAR § 16.203-4, consistent with the language of FAR § 16.203-1, address two types of adjustments based on "established prices," and none based on "contractor's established prices." The subsections addressing adjustments based on "established prices" for standard and semistandard supplies include the requirement that the supplies "have an established catalog or market price, verified using the criteria in 15.804-3." 48 C.F.R. § 16.203-4(a)(ii) & (b)(ii) (1994).

FAR § 15.804-3 governs price negotiations and prohibits contracting officers from requiring submission of cost or pricing data if "the contracting officer determines that prices are . . . [b]ased on established catalog or market prices of commercial items sold in substantial quantities to the general public." 48 C.F.R. § 15.804-3(a)(2) (1994). According to the regulation,

> [e]stablished catalog prices must be recorded in a form regularly maintained by the manufacturer or vendor. This form may be a catalog,

> price list, schedule or other verifiable and established record. The record must (i) be published or otherwise available for customer inspection and (ii) state current or last sales price to a significant number of buyers constituting the general public.

48 C.F.R. § 15.804-3(c)(1). "Established market prices" are defined as "current prices that (i) are established in the course of ordinary and usual trade between buyers and sellers free to bargain and (ii) can be substantiated by data from sources independent of the offeror." 48 C.F.R. § 15.804-3(c)(2). The government argues that the regulatory cross-references mean that the term "established prices" used in FAR § 16.203-4 should be understood to encompass both "established catalog prices" and "established market prices" as defined by FAR § 15.804-3(c). Thus, adjustments based on an established price should not be limited only to fluctuations in the prices of the individual contractor, but may also include market fluctuations.

As further support for its expansive interpretation of FAR § 16.203-1, the government relies on FAR § 16.203-2, which establishes the conditions under which a fixed-price contract with an EPA clause may be used. FAR § 16.203-2 provides that:

> A fixed-price contract with economic price adjustment may be used when (i) there is serious doubt concerning the stability of market or labor conditions that will exist during an extended period of contract performance, and (ii) contingencies that would otherwise be included in the contract price can be identified and covered separately in the contract. Price adjustments based on established prices should normally be restricted to industry-wide contingencies. Price adjustments based on labor and material costs should be limited to contingencies beyond the contractor's control.

48 C.F.R. § 16.203-2 (1994). Noting that this section also uses the phrase "established prices," but not "contractor's established prices," the government argues that FAR § 16.203-2 indicates a preference that EPA clauses not be used to address contractor-specific cost issues, but rather "industry-wide contingencies" and "contingencies beyond

the contractor's control." Id. Accordingly, the government argues, FAR § 16.203-2 further undermines Appellants' reading of FAR § 16.203-1 to prohibit EPA clauses using market-based references.

C. Prior Litigation in the Court of Federal Claims

Although this is the first time this court has directly considered the issue of DESC's liability for its use of a market-based EPA clause,[3] the Court of Federal Claims has addressed the parties' arguments in nine cases prior to the two that serve as the basis of this appeal.[4] In the first such case, MAPCO, 27 Fed. Cl. at 409-10, the court adopted Appellants' arguments and held that the meaning of "established prices" in FAR § 16.203-1(a) is limited to "contractor's established prices" by reference to the language of FAR § 16.203-3. In addition to the cited regulatory history of the FAR and its connection to the DAR, the court based its decision on sections of the FAR that provide standard language for EPA clauses. Id. at 410. The court cited the following language from FAR § 52.216-2 as evidence that the terms "established price" and "contractor's established price" are used interchangeably in those clauses:

---

[3] This court has previously addressed the appropriate valuation methodology for assessing a damages award to a fuel supplier stemming from DESC's use of the market-based EPA clause. Barrett Refining Corp. v. United States, 242 F.3d 1055 (Fed. Cir. 2001). However, in Barrett, the government did not contest liability either before the Court of Federal Claims or on appeal. Barrett, 242 F.3d at 1064; Barrett Refining Corp. v. United States, 42 Fed. Cl. 128, 130 (1998).

[4] Sunoco, Inc. v. United States, 59 Fed. Cl. 390 (2004); Navajo Ref. Co., L.P. v. United States, 58 Fed. Cl. 200 (2003); Williams Ala. Petroleum, Inc. v. United States, 57 Fed. Cl. 789 (2003); Calcasieu Ref. Co. v. United States, 2003 WL 22049528 (Fed. Cl. July 31, 2003); Berry Petroleum Co. v. United States, No. 02-1462 (Fed. Cl. June 10, 2003) (bench ruling); Phoenix Petroleum Co. v. United States, No. 97-315C (Fed. Cl. April 30, 2003); La Gloria Oil & Gas Co. v. United States, 56 Fed. Cl. 211 (2003); Gold Line Ref., Ltd. v. United States, 54 Fed. Cl. 285 (2002); MAPCO Ala. Petroleum, Inc. v. United States, 27 Fed. Cl. 405 (1992).

> (a) The Contractor warrants that the unit price stated in the Schedule for [*offeror insert Schedule line item number*] is not in excess of the Contractor's applicable established price in effect on the contract date for like quantities of the same item. . . . The term "established price" means a price that (1) is an established catalog or market price for a commercial item sold in substantial quantities to the general public, (2) meets the criteria of subsection 15.804-3 of the Federal Acquisition Regulation (FAR), and (3) is the net price after applying any standard trade discounts offered by the Contractor.

Id. (emphases added). Of the ten cases after MAPCO where the Court of Federal Claims has reached the issue of the legality of DESC's EPA clause, nine, including the two instant cases, applied the reasoning of MAPCO and concluded that DESC's use of a market-based EPA was not authorized by the FAR.[5] Additionally, in Barrett Refining Corp. v. United States, 242 F.3d 1055, 1064 (Fed. Cir. 2001), this court presumed without deciding that the holding of MAPCO was correct.

One decision of the Court of Federal Claims has held differently. In Williams Alaska Petroleum, Inc. v. United States, 57 Fed. Cl. 789 (2003), the court rejected Appellants' argument and the reasoning in MAPCO as contradictory to the plain meaning of the words used in the regulation. Id. at 796. The court in Williams dismissed Appellant's interpretation of the FAR in light of the DAR on the grounds that "[t]here is no more reason to say that the DAR contains an implicit term than to make that claim about the FAR." Id. Applying the caveat that "price adjustments based on established prices . . . be restricted to industry-wide contingencies" as articulated in FAR § 16.203-2, the court held that "FAR § 16.203 not only permits adjustments to a

---

[5] Sunoco, 59 Fed. Cl. at 394-95; Hermes, 58 Fed. Cl. 3, 11-12; Tesoro, 58 Fed. Cl. at 68-70; Navajo Ref., 58 Fed. Cl. at 205; Calcasieu Ref. 2003 WL 22049528 at *5; Berry Petroleum, No. 02-1462 (Fed. Cl. June 10, 2003) (bench ruling); Phoenix Petroleum Co. v. United States, No. 97-315C, slip op. at 4 (Fed. Cl. April 30, 2003); La Gloria, 56 Fed. Cl. at 214-15; Gold Line, 54 Fed. Cl. at 295.

contractor's established prices to be based on market indexes, but in fact requires it." Id. at 797.

D. Analysis

We agree with the court in Williams that the plain meaning of the regulatory language contradicts Appellants' arguments and the holding of MAPCO and its progeny. We construe a regulation in the same manner as we construe a statute, by ascertaining its plain meaning. Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 414-15 (1945) (focusing on the "plain words of the regulation" to ascertain the meaning of the regulation); Lockheed Corp. v. Widnall, 113 F.3d 1225, 1227 (Fed. Cir. 1997) ("To interpret a regulation we must look at its plain language and consider the terms in accordance with their common meaning."); Whelan v. United States, 529 F.2d 1000, 1002-03 (Ct. Cl. 1976) ("The 'plain meaning' rules of statutory construction apply to the interpretation of administrative regulations."). If we conclude that the terms of the regulation are unambiguous, no further inquiry is usually required. Cox v. West, 149 F.3d 1360, 1363 (Fed Cir. 1998); Lockheed, 113 F.3d at 1227. When there is no ambiguity in the meaning of the regulation, "it is the duty of the courts to enforce it according to its obvious terms and not to insert words and phrases so as to incorporate therein a new and distinct provision." Gibson v. United States, 194 U.S. 182, 185 (1904); see also United States v. Temple, 105 U.S. 97, 98 (1881).

The meaning of the regulations governing the use of EPA clauses is plain and we reject Appellants' invitation to insert words into the regulation to alter that meaning. Although the term "established price" is not expressly defined in FAR § 16.203, the definition of the term in FAR § 15.804-3 is incorporated by reference. FAR § 15.804-3

defines "established prices" to include contractor-specific prices, namely "established catalog prices," and industry-based prices, namely "established market prices." As indicated by FAR § 16.203-2 and FAR § 15.804-3, the policy behind requiring use of "established prices" is to avoid contracts subject to the operational whims of individual contractors.

Appellants' arguments that the addition of the term "contractor's" before "established prices" in FAR § 16.203-3 requires that adjustments be based only on changes in the prices charged by individual contractors eviscerates the regulatory meaning of the term "established prices" and the policy reasons for using it. The combination of the term "contractor's" with "established prices" in FAR § 16.203-3 indicates which "established prices" are relevant to a contracting action, but does not exclude the subcategory of "established market prices." According to the interplay of all four sections of FAR § 16.203, a "contractor's established price" may be established by reference to either a catalog or market sources independent of the manufacturer or vendor. See Vectra Fitness, Inc. v. TNWK Corp., 162 F.3d 1379, 1383-84 (Fed. Cir. 1998) ("statutory interpretation is a 'holistic endeavor' that requires consideration of a statutory scheme in its entirety" (quoting United Sav. Ass'n v. Timbers of Inwood Forest Assoc., 484 U.S. 365, 371 (1988))).

Appellants' arguments that the term "contractor's established price" is periodically used interchangeably with the defined term "established price" does not change this conclusion. The usage of the terms "contractor's applicable established price" and "established price" in the language of the standard EPA clause in FAR § 52.216-2 explicitly reinforces the determination that "contractor's applicable established price"

includes both forms of established prices provided for in FAR § 15.804-3. Even were we to credit Appellants' interpretation of the regulatory history of the FAR and the DAR and read the term "contractor's established price" into the language of FAR § 16.203-1, there is still no reason to conclude that the regulations exclude the use of market-based references to identify "established prices."

The regulations permit use of contracts that include adjustments based on established prices, but do not limit those adjustments to changes only in the specific prices offered by an individual contractor. Thus, DESC's use of market-based references to determine adjustments to established prices was authorized under the law.

Appellants also assert that DESC's use of an EPA clause tied particularly to the PMM does not comport with the express requirements of FAR § 16.203-3. This assertion is based on the legal premise that FAR § 16.203-3 limits price adjustments to accommodations for one of two contingencies: "significant fluctuations in labor or material costs" or "changes in the contractor's established prices." 48 U.S.C. § 16.203-3. Relying on the language of MAPCO, Appellants claim that a PMM-based EPA clause fails to address either of the "mischiefs" specified in FAR § 16.203-3, because the PMM is an "amalgamation" of petroleum sales that does not reflect the product, the market, or the price for the military fuel Tesoro and Hermes supplied.

The Court of Federal Claims in MAPCO concluded that DESC's use of the PMM did not comport with the requirements of FAR § 16.203-3, because the PMM was not a catalog, did not reflect any established catalog prices, and did not reflect any established market. MAPCO, 27 Fed. Cl. at 410. The determination that PMM did not

reflect any established market price was explained as follows: "The index is an amalgamation of the previous month's petroleum sales data. It is not, as § 15.804-3(c)(2) contemplates, determinative of any particular corporation's current prices." MAPCO, 27 Fed. Cl. at 410. The court went on to apply dictionary definitions of the term "establish" to conclude that:

> [f]or a price to be 'established' therefore, a purchaser would have to have assurance that he could go to a particular vendor and insist on an advertised price. An average of month-old sales in no sense creates an established price. The index itself does not reflect any specific vendor's current price. In sum, the index at issue is neither the contractor's, nor does it reflect an established price.

MAPCO, 27 Fed. Cl. at 410. In both Tesoro and Hermes, the court adopted the reasoning of MAPCO and concluded that DESC's adjustment of fuel prices by reference to the PMM did not comport with the FAR because such a practice was not designed to meet the purpose identified in FAR § 16.203-3, namely accommodating significant fluctuations in labor or material costs or changes in the contractor's established prices. Tesoro, 58 Fed. Cl. at 69; Hermes, 58 Fed. Cl. at 10-11.

The conclusion that DESC's use of the PMM-based EPA clause was not designed to protect against the ills identified in FAR § 16.203-3 was premised on a misinterpretation of the meaning of the term "contractor's established prices." As we have explained herein, contrary to the conclusion of the Court of Federal Claims, market-based EPA clauses are permitted under the FAR. As discussed above, FAR § 16.203-3 does not require that adjustments be tied solely to changes in the prices charged by a particular contractor. Because the FAR does not impose the restrictions articulated by the Court of Federal Claims, it was legal error for the court to reject

DESC's use of the PMM on the grounds that it "does not reflect any specific vendor's current price."

Because we conclude that DESC's use of a market-based EPA clause tied to the PMM was authorized under the FAR, we do not reach the other issues raised in the certified questions. See Eurodif S.A. v. United States, No. 04-1209, __ F.3d __, 2005 U.S. App. LEXIS 3567 at *29 (Fed. Cir. Mar. 3, 2005) (declining to reach issue presented by certified question when resolution of related certified questions obviated the applicability of the issue to the case at hand). The issue regarding the legality of the procedures used to obtain the individual and class deviations is moot in light of our determination that the clause that DESC sought permission to use was authorized by the FAR. Likewise, the government's argument that Appellants waived their breach of contract claims was based on the presumption that Appellants acquiesced in the incorporation of the illegal EPA clauses and then fully performed the contract before bringing suit. Hermes, 58 Fed. Cl. at 12; Tesoro, 58 Fed. Cl. at 73. Our holding that the use of the PMM-based EPA clause was authorized under the statute moots the issue as to whether Appellants had waived their right to challenge the legality of that clause.

## III. CONCLUSION

For the foregoing reasons, we hold that the Court of Federal Claims erred in holding that DESC's use of a PMM-based EPA clause was not authorized under the FAR. Accordingly, we reverse the decisions of the Court of Federal Claims. Our holding moots the other issues raised in the certified questions and therefore we do not reach the remaining issues related to the individual and class deviations and the applicability of the doctrine of waiver.

## IV. COSTS

No costs.

REVERSED.

CERTIFIED COPY
I HEREBY CERTIFY THIS DOCUMENT
IS A TRUE AND CORRECT COPY
OF THE ORIGINAL ON FILE.

UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

By: [signature] Date: AUG 29, 2005